**John BELTRAN, Appellant**

v.

**The STATE of Texas, Appellee**

**No. 04-15-00410-CR**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: March 8, 2017

Dayna L. Jones, 1800 McCullough Ave, San Antonio, TX 78212, Debra L. Parker, 111 Soledad St., Suite 300, San Antonio, TX 78205-2321, for Appellant.

Nicholas A. LaHood, District Attorney, Bexar County, 101 W. Nueva, Suite 370, Laura Durbin, 101 W. Nueva, San Antonio, TX 78205, for Appellee.

Sitting: Patricia O. Alvarez, Justice, Luz Elena D. Chapa, Justice, Irene Rios, Justice

## OPINION

Opinion by: Patricia O. Alvarez, Justice

Appellant John Beltran was charged with five counts of sexual assault of a child. The jury found Beltran guilty on all charges and assessed punishment at six years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Beltran raises three issues: (1) the trial court's incorrect limiting instruction regarding extraneous offense testimony was reversible error, (2) the evidence was insufficient to support the convictions for multiple counts of sexual assault as alleged in the indictment, and (3) Beltran's Sixth Amendment right to confront and cross-examine the witnesses against him was violated when the trial court limited cross-examination of S.O. about theft cases that would have exposed her bias and motive to testify. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Because our inquiry is highly fact-intensive, we set forth a rather detailed account of the evidence presented during the trial.

### A. Police Officers

#### 1. Sergeant Daniel Gonzales

On October 12, 2011, San Antonio Police Department Sergeant Daniel Gonzales responded to a call at a fast-food restaurant in San Antonio, Bexar County, Texas. The sheriff's office dispatch reported a young female was trying to "get away from her mother who was chasing her in another vehicle." Sergeant Gonzales approached S.O. who reported "she was trying to get away from her mother because her mother for the last couple of years had been basically prostituting her out to her mother's drug dealer in exchange for drugs." The dispatch officer notified Sergeant Gonzales that S.O. had an active warrant for theft charges; both S.O. and her mother were transported to the police department for further investigation.

#### 2. Detective Edward Sandoval

S.O. led Detective Edward Sandoval, with the San Antonio Police Department Special Victims Unit, to the specific location and identified the house "where she said the incident happened." Detective Sandoval also prepared and presented S.O. with a six-photograph line-up. Detective Sandoval testified that S.O. originally said she recognized the individual in picture number six. As the officer was completing his paperwork, however, S.O. asked to view the pictures again. Detective Sandoval explained, "She came back and she pointed to Number 3 and said, 'That's the one that my mom used to take me to,' and then she gave me the guy's name." S.O. further reported that his name was "Johnny." Upon further questioning, Detective Sandoval testified that S.O. said she "recognized" the individual identified as Number 6, but when she identified Number 3, "She said his name, Johnny, and she said, That's the one my mother used to take me to."

### 3. Detective Robert Valadez

San Antonio Police Detective Robert Valadez was the lead officer on the case. He explained that he did not send S.O. for a sexual assault examination because medical evidence can only be collected within three or four days of the assault. In this case, S.O. reported the last sexual encounter was approximately ninety-days prior to her outcry.

## B. Sally, S.O.'s Mother

Sally, S.O.'s mother, acknowledged entering a plea of guilty to one count of trafficking of a child, S.O., on November 1, 2009, and for two counts of compelling prostitution to Beltran. Part of Sally's plea agreement was to testify against Beltran.

Sally testified that her cocaine addiction began in 1995. In 2008 or 2009, fifteen-year-old S.O. moved in with her mother. Sally further testified that she made an agreement with Beltran for her (Sally) to take S.O. to Beltran's house to have sexual intercourse with him in exchange for cocaine. She further acknowledged taking S.O. to Beltran's house two or three times a week; this number was called into question during cross-examination. This agreement between Sally and Beltran continued until S.O. turned eighteen and moved out of her mother's house.

During cross-examination, Sally acknowledged her drug use limited her ability to remember much of what had transpired. She wavered on exactly when S.O. moved back into her house or when S.O. moved out. Sally acknowledged stealing clothes and taking them to Beltran's home and also admitted stealing camera batteries from a store and giving them to Beltran.

## C. S.O.

S.O. testified that Sally took her to Beltran's house, she went to the door by herself, and knocked. S.O. then described how Beltran sexually assaulted her. S.O. testified this occurred several times between the ages of fifteen and eighteen years. S.O. wavered on the exact number of times Beltran assaulted her, but consistently testified that it happened numerous times. S.O. acknowledged she was unable to identify Beltran in the first photographic lineup the officers provided. She further acknowledged that she denied an abuse to CPS because she was scared.

We first address Beltran's assertion that the trial court committed reversible error in its limiting instruction regarding extraneous offense testimony that Beltran was dealing drugs.

### EXTRANEOUS OFFENSE EVIDENCE

## A. Standard of Review

▮▮ An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Prible*, 175 S.W.3d at 731 (quoting *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)); *accord Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (concluding that discretion is not abused if the decision falls within the zone of reasonable disagreement). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed" regardless of the reason for the trial court's ruling. *Devoe*, 354 S.W.3d at 469; *accord Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

■ "Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character." *Devoe*, 354 S.W.3d at 469 (citing TEX. R. EVID. 404(b)). To be admissible, extraneous offense evidence must pass the two-prong test imposed by Texas Rules of Evidence 404(b) and 403: (1) "the extraneous offense evidence [must be] relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and [ (2) ] the probative value of the evidence [must not be] substantially outweighed by unfair prejudice." *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

■ Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible 'to prove the character of a person in order to show action in conformity therewith.' " *Prible*, 175 S.W.3d at 731 (quoting TEX. R. EVID. 404(b)). "The list of exceptions under Rule 404(b) is 'neither mutually exclusive nor collectively exhaustive.' " *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990)). Such extraneous offense evidence may be admissible, however, "when it has relevance apart from character conformity." *Devoe*, 354 S.W.3d at 469. This may include evidence offered to "show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* (citing TEX. R. EVID. 404(b)).

■ Similarly, extraneous offense evidence may also be admissible as same-transaction contextual evidence, where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction." *Prible*, 175 S.W.3d at 731 (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). "In that situation, 'the jury is entitled to know all [the] relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum.' " *Id.* (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)). Evidence admitted under the same transaction exception is considered general evidence to be used for all purposes and does not require a limiting instruction. *See Devoe*, 354 S.W.3d at 471 (citing *Castaldo v. State*, 78 S.W.3d 345, 352 (Tex. Crim. App. 2002)).

## B. Arguments of the Parties

Beltran contends the trial court erroneously allowed the State to elicit testimony—that Beltran was dealing drugs—in violation of article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West 2017). Beltran asserts that article 38.37 only allows evidence of other *sexual acts* committed by the defendant to be admitted for any relevant matters, including the character of the defendant, and the trial court erred in refusing to provide the jury with an instruction limiting the scope of the evidence to its proper use.

The State counters that the evidence was properly admitted as same-transaction contextual evidence and thus no limiting instruction was necessary.

## C. Analysis

During the trial, the State elicited testimony that Beltran was a drug dealer. The purpose of showing this was to demonstrate that, in lieu of paying for the drugs, Sally allowed Beltran to perform sexual acts on S.O. Defense counsel objected and requested a limiting instruction under article 38.37 of the Texas Code of Criminal Procedure. *See id.*

■ "[S]ame-transaction contextual evidence is admissible only when the [charged] offense would make little or no

sense without also bringing in [the same-transaction contextual] evidence." *Devoe*, 354 S.W.3d at 469. In other words, same-transaction contextual evidence is admissible only "where such evidence is *necessary* to the jury's understanding of the instant offense." *Rogers*, 853 S.W.2d at 33.

Here, the testimony regarding Beltran selling drugs to Sally is necessary to explain how Beltran had access to S.O. Beltran's sexual abuse of S.O. did not happen in a vacuum, and the jury was entitled " 'to hear what occurred immediately prior to and subsequent to the commission of [the offense] so that it may realistically evaluate the evidence.' " *Williams v. State*, 359 S.W.3d 272, 274–75 (Tex. App.—San Antonio 2011, pet. ref'd) (alteration in original) (quoting *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)).

The testimony regarding Beltran selling drugs to Sally was necessary for the jury's understanding of the charged offenses. *See Devoe*, 354 S.W.3d at 469. Beltran's providing Sally with drugs explained why S.O. was at his house, and Sally's agreement to provide S.O. to Beltran for sex in exchange for drugs explains why S.O. was in Beltran's residence without Sally. *See Taylor v. State*, 263 S.W.3d 304, 314 (Tex. App.—Houston [1st Dist.] 2007), *aff'd*, 268 S.W.3d 571 (Tex. Crim. App. 2008) (concluding defendant's use of a firearm, possession and use of cocaine, and providing cocaine to the victim "were so intertwined with the sexual assault that the jury's understanding of the sexual assault would have been obscured without them"). Here, the evidence of Beltran providing cocaine to Sally in exchange for Sally providing S.O. to Beltran for sex was evidence that put Beltran's repeated sexual assault of S.O. in context for the jury. *See id.*

Accordingly, because Beltran's drug dealing was so intertwined with his sexual assault of S.O., we conclude the trial court

did not abuse its discretion in allowing the testimony as same-transaction contextual evidence. *See id.* Moreover, because the evidence was properly admitted as same-transaction contextual evidence, no limiting instruction was required. *See Devoe*, 354 S.W.3d at 471.

We next address Beltran's contention that the evidence was insufficient to support his conviction.

### SUFFICIENCY OF THE EVIDENCE

#### A. Standard of Review

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence...." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability " 'to draw reasonable inferences from basic facts to ultimate facts.' " *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility

to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *See Hooper,* 214 S.W.3d at 13; *King,* 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *See Hooper,* 214 S.W.3d at 15; *Young v. State,* 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young,* 358 S.W.3d at 801.

## B. Arguments of the Parties

Beltran argues that the testimony from S.O. was too vague to establish the elements of sexual assault as alleged in the four counts of his penetration of S.O.'s female sexual organ. Beltran further claims that the court cannot conclude that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Powell v. State,* 194 S.W.3d 503, 506 (Tex. Crim. App. 2006) (citing *Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781).

## C. Sexual Assault

A person commits the offense of sexual assault of a child younger than seventeen years of age if the person "intentionally or knowingly . . . causes the penetration of the . . . sexual organ of a child by any means." TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West 2011). " 'Child' means a person younger than 17 years of age." *Id.* § 22.011(c)(1); *accord Johnson v. State,* 103 S.W.3d 463, 463 (Tex. App.—San Antonio 2003, no pet.).

## D. Analysis

S.O. testified that Beltran had sex with her at least five times but it was "lots of times" that he raped her. S.O. was born on August 30, 1993. Therefore, even at the latest date alleged in the indictment, S.O. was sixteen years old, and her age met the definition for sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(c)(1); *Johnson,* 103 S.W.3d at 463.

During her testimony, S.O. relayed that she was forced to have sex with Beltran twice a day, every day. S.O.'s testimony alone is sufficient to establish the elements of the offense of sexual assault for which the jury found Beltran guilty. *See Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) (holding testimony of complainant regarding sexual offense was sufficient, standing alone); *Connell v. State,* 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.) (holding testimony of victim regarding sexual offenses was sufficient evidence to support conviction); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2017) (providing that, under certain circumstances, convictions for sexual offenses are supportable on the uncorroborated testimony of a child victim under seventeen years of age).

While there are some contradictions in S.O.'s testimony, it is well established that it is the jury's province to resolve contradictions in testimony. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Temple v. State,* 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979). In our review, we resolve any inconsistencies in the evidence in favor of the verdict. *See Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *Rivera v. State,* 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Beltran sexually assaulted S.O. on at least

four separate occasions. *See Adames,* 353 S.W.3d at 860; *Gear,* 340 S.W.3d at 746.

## RIGHT TO CONFRONTATION

■ On direct examination, S.O. testified that she was charged with theft committed sometime between the ages of fifteen and eighteen years. During S.O.'s cross-examination, Beltran's attorney was prevented from questioning S.O. about the details surrounding the theft charge.

### A. Arguments of the Parties

Beltran claims that his Sixth Amendment right to confront and cross-examine the witnesses against him was violated when the trial court limited cross-examination of the complainant about theft cases that would have exposed her bias and motive to testify. *See Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

■ The State counters that in order to cross-examine a witness regarding their probationary status, the proponent of the impeachment must establish some causal or logical connection between the witness's status and the testimony at trial. *See Irby v. State,* 327 S.W.3d 138, 140 (Tex. Crim. App. 2010) ("[A] defendant must show some causal connection or logical relationship between a witness's probationary status and his potential bias to testify favorably toward the State before the witness may be cross-examined with that status.").

### B. Standard of Review

■ In a criminal prosecution, a defendant has a Sixth Amendment right to question witnesses offering testimony against him. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."); *Gonzalez v. State,* 195 S.W.3d 114, 116 (Tex. Crim. App. 2006). "Even when hearsay offered against a defendant is admissible under evidentiary rules, that evidence may implicate the Confrontation Clause of the Sixth Amendment if the defendant is not afforded the opportunity to confront the out-of-court declarant." *Gonzalez,* 195 S.W.3d at 116 (citing *Shuffield v. State,* 189 S.W.3d 782, 790–91 (Tex. Crim. App. 2006)). "The constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable." *Irby,* 327 S.W.3d at 145.

■ "[T]he trial judge retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

### C. Analysis

Beltran argues that the trial court's refusal to allow him to question S.O. about her theft charges prevented him from exposing her bias and motive to curry favor with the State. S.O. was arrested on an outstanding warrant for a motion to revoke her probation at the time that she was alleging the assaults. After testifying to being a victim of sexual assault, S.O. was released on a personal recognizance bond. Defense counsel was not allowed to question S.O. regarding the theft charges during cross-examination. We note, however, Beltran's counsel never questioned S.O. about the pending motion to revoke and there was no testimony exhibiting the existence of, or expectation of a deal or other favorable treatment by the state. *See id.*

Beltran relies on *Davis* for the proposition that a defendant may cross-examine a witness on any subject "reasonably calculated to expose motive, bias, or interest for the witness to testify." *See id.* at 144–45 (citing *Davis*, 415 U.S. at 315, 94 S.Ct. 1105). *Davis* and its progeny stand for the proposition that the introduction of a prior crime is admissible to attack the witness's credibility or possible bias. *See Davis*, 415 U.S. at 315, 94 S.Ct. 1105; *Irby*, 327 S.W.3d at 145. For the *Davis* analogy to apply to S.O., the evidence would necessarily have to support that S.O.'s reporting of Beltran's sexual assault would have diverted the State's attention from, or gained favor with the State regarding, her theft charges. *See Irby*, 327 S.W.3d at 145. The *Irby* Court warned, however, that the fact that a witness is facing a pending charge or a change in probation status is not relevant for showing bias or motive to testify absent some "causal connection" or "logical relationship." *Id.*; *see Johnson v. State*, 433 S.W.3d 546, 553 (Tex. Crim. App. 2014).

The evidence must show a causal connection between the elicited testimony and the existence of a plea agreement, or testimony showing the witness believes a deal exists in the pending matter. "[I]n the context of cross-examination of a witness with pending charges, '[f]or the evidence to be admissible, the proponent must establish some causal connection or logical relationship between the pending charges and the witness'[s] "vulnerable relationship" or potential bias or prejudice for the State, or testimony at trial.'" *Irby*, 327 S.W.3d at 147 (quoting *Carpenter v. State*, 979 S.W.2d 633, 634–35 & n.4 (Tex. Crim. App. 1998)). Absent some evidence established by the proponent of a causal connection, the trial court does not abuse its discretion by limiting cross-examination. *Id.* at 149.

Beltran argues that whatever the testimony would have shown during trial, counsel had a right to question S.O. about the theft charges in order to expose S.O.'s motive and bias to testify against Beltran. Beltran claims S.O.'s motive for testifying against him was to be seen as a victim of sexual abuse rather than a thief so she could avoid going to jail.

The fact that S.O. was on probation and facing pending charges was not relevant for purposes of showing bias or motive absent some plausible connection between the pending charges and her testimony. *See id.* Because the evidence fails to show a causal connection between the elicited testimony and the existence of a plea agreement, or to show S.O. believed a deal existed in exchange for her allegations of Beltran's sexual assault, we conclude the trial court did not abuse its discretion in limiting the cross-examination in question. *See id.* at 150 n.43; *Carpenter*, 979 S.W.2d at 635 n.5.

### Conclusion

Having overruled each of Beltran's arguments on appeal, we affirm the trial court's judgment.