

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00031-CR

———————————————

JOHN MICHEAL MCBRIDE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 90th District Court
Young County, Texas
Trial Court No. 10678

Before Sudderth, C.J., Meier and Kerr, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

A jury found appellant John Micheal[1] McBride guilty of sexually assaulting a child and assessed his punishment at 15 years in the penitentiary, and the trial court sentenced him accordingly. Holding that McBride failed to preserve his first appellate issue and waived his second, we affirm.

**McBride's two issues**

In his first issue, McBride asserts that the trial court erroneously admitted an extraneous offense because the State had not given him the required article 38.37 30-day notice. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 3 (West 2018). And in his second issue, he asserts that the trial court erroneously admitted the same extraneous offense because the danger of unfair prejudice substantially outweighed its probative value. *See* Tex. R. Evid. 403, 404(b). The extraneous act about which McBride complains in both issues is that he engaged in oral sex with the complainant, which, as he correctly notes, was not alleged in the indictment. The State's indictment charged McBride only with intentionally and knowingly digitally penetrating a child's sexual organ. Tex. Penal Code Ann. § 22.011(a)(1)(A), (a)(2)(A), (c)(1) (West Supp. 2018).

The State responds that the complained-of evidence is not an extraneous offense but same-transaction contextual evidence, which is intrinsic to the offense and thus admissible. *See Worthy v. State*, 312 S.W.3d 34, 39 (Tex. Crim. App. 2010). But

---

[1]So spelled.

because we hold that McBride has not preserved his first complaint and waived his second, we need not decide whether the State is correct.

**First Issue**

McBride never objected at trial that the State failed to give him timely notice. Without an objection and adverse ruling, we hold that he has not preserved his appellate complaint and overrule his first issue. *See* Tex. R. App. P. 33.1; *Belcher v. State*, 474 S.W.3d 840, 850 (Tex. App.—Tyler 2015, no pet.).

**Second Issue**

McBride's next issue complains about the trial court's admitting oral-sex evidence generally and, more specifically, about its admitting DNA evidence. As we understand his argument, saliva more likely produced the DNA evidence than any touching did, so the DNA evidence was far more likely to prove that he engaged in oral sex than that he digitally penetrated the complainant.[2] Because the State did not charge McBride with oral sex and because McBride contends that oral sex inflames jurors' judgment more than digital penetration, he maintains that the danger of unfair prejudice greatly outweighed the DNA evidence's probative value. *See* Tex. R. Evid. 403, 404(b).

---

[2]Assuming that digital penetration was less likely than saliva to leave DNA evidence, this argument ties in with the State's contention that, for the jury to properly understand the evidence, it needed to know that oral sex, which was more likely to leave DNA evidence, was part of an indivisible criminal transaction and thus admissible. *See Beltran v. State*, 517 S.W.3d 243, 248–49 (Tex. App.—San Antonio 2017, no pet.). Our holding that McBride waived his second issue moots this question.

To the extent that McBride complains about the trial court's admitting oral-sex evidence generally, in his brief he does not point to where in the record he objected to non-DNA-related oral-sex testimony. Indeed, as we will show, oral-sex testimony unrelated to the DNA evidence came in repeatedly without objection. McBride thus failed to preserve this complaint. *See* Tex. R. App. P. 33.1.

But to the extent that McBride complains about the trial court's admitting DNA evidence and the accompanying testimony showing that the DNA was more likely the product of oral sex than digital penetration, both McBride's brief and the record show that he consistently objected and obtained adverse rulings. For analytical purposes, though, McBride's DNA arguments dovetail with and are ultimately decided by the oral-sex testimony generally.

That is, McBride's failure to keep out the non-DNA-related oral-sex testimony guts his attacking the DNA evidence on the theory that it more likely proved oral sex than digital penetration. When the same evidence comes in without objection, either before or after a complained-of ruling, we will not reverse. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Cantrell v. State*, No. 02-04-00083-CR, 2005 WL 1119808, at *5 (Tex. App.—Fort Worth May 12, 2005, no pet.) (mem. op., not designated for publication). Here, both before and after DNA analyst Heather Kramer testified, evidence that McBride engaged in oral sex with the complainant came in numerous times without objection.

For example, before Kramer took the stand, Christa Thornhill (the complainant's sexual-assault nurse-examiner) testified that the complainant had described her medical history, and Thornhill then related, without objection, what the complainant had told her:

> A. [The complainant said,] "I went to the bathroom about 1:00 a.m. When I came back to the living room, he came over to me and started to rub my leg. I was afraid. I just laid there very still. He pulled off my shorts and panties. I said, No. He licked me down there."
>
> Q. Where is down there?
>
> A. She pointed, so I asked her what she called that area, and she said "vagina."
>
> Q. Okay.
>
> A. "I didn't want him to. I told him to stop; that I just needed to go to bed. He kept on; going for 30 minutes. Then he stopped. I was crying when he left. . . ."

And when asked if the complainant described any other sexual act, Thornhill responded, "Yes. She said, 'He licked me down there,' and pointed at the vagina, 'and fingered me down there,' and indicated her vagina." On yet another occasion, Thornhill added:

> A. I asked about oral copulation of genitals.
>
> Q. What's oral copulation?
>
> A. Well, so how I explain it to a 14-year old is did he put his mouth on your vagina—
>
> Q. Okay.
>
> A. —or did he put his mouth on your anus.

Q. And what is her response to that?

A. It was "yes" that he put his mouth on her.

Similarly, when recounting the oral medical history that the complainant's mother had given her, Thornhill said, "[The complainant] had told her mom he pulled off her shorts and panties, and he put his fingers inside of her and licked her." And in her written findings, which were also admitted into evidence, Thornhill indicated that there was digital contact with the vagina and genital "[o]ral copulation of the patient by the assailant." By the time Kramer later testified, Thornhill's testimony had already shown (if the jury found her credible) that McBride had both digitally penetrated the complainant and had oral sex with her.

And after Kramer had left the stand, the complainant herself testified—without objection—as follows:

[Prosecutor] Q. . . . . So go ahead and finish telling us what happened.

A. He had laid me down, pushed back on my shoulders, and then he took off my shorts and started kissing me down there, and then he put his fingers in me. I tried to tell him to stop, but I was being very quiet. I didn't want to wake [up his daughter with whom I was spending the night]. I didn't want her to hear anything, because I didn't want her to see any of that happening because I knew it would hurt her.

Q. Did he stop?

A. No.

Q. Did he just continue on? Did you struggle, or did you just kind of lay there? What happened?

6

A. I tried to push his head up off of me, and it didn't work. I continued to try to get him to stop, and I was saying "no," but I just—I didn't want to make too much noise, or, if I had maybe struggled a little more, I didn't want to get hurt I guess. I was just scared of what would happen if I fought more.

Q. And you said that he kissed you down there. Are you saying that he licked your genital area?

A. Yes.

Q. And you said that he put his finger inside of you. Was that in between your lips of your genitalia?

A. Yes.

The complainant indicated that the ordeal lasted for 20 to 30 minutes, and when asked which activity McBride had done more often during that time, she responded, "Him licking my vagina." Once again, other unobjected-to evidence showed that McBride's sexual assault encompassed oral sex as well as digital penetration.

McBride also argues that because identity was not an issue, the danger of unfair prejudice greatly outweighed the DNA evidence's probative value. We disagree. The question was not whether the complainant correctly identified her assailant but whether the complainant had been assaulted at all. Based on the record, McBride was apparently willing to take his chances with he-said, she-said evidence but was not willing to do so against DNA evidence, which gave the jury something other than the complainant's word to weigh when deciding whether McBride committed the digital-penetration offense. Under the circumstances, regardless of the DNA evidence's origins, its probative value was great because it showed that inappropriate contact of

7

some kind had occurred, and the other oral-sex evidence effectively mooted any prejudicial value that the DNA evidence might otherwise have had if it had been the only link introducing oral sex into the overall assault. *See Leday*, 983 S.W.2d at 718.

Next, McBride points to the evidence that the complainant had two fresh abrasions on her right and left inner labia majora that Thornhill said were consistent with digital penetration, which he contends eliminated the State's need for the DNA evidence. We again disagree. During final argument, McBride argued that the complainant had manufactured the whole scenario to get attention. In this light, the abrasions did not necessarily point to McBride's digitally penetrating the complainant, but the DNA evidence and Kramer's testimony did by showing that McBride engaged in some sort of inappropriate contact—oral, digital, or both—with the complainant. McBride could perhaps easily explain away the abrasions, but whether he could explain away his DNA on the complainant's vagina and underwear would not be so easy.

With DNA evidence, the State could directly corroborate part of the complainant's testimony—but the question remained: which part? It was either direct evidence of oral sex and circumstantial evidence of digital penetration, or it directly proved digital penetration and circumstantially supported oral sex. But this is a distinction without substance because circumstantial evidence is no less trustworthy than direct evidence. *See Jiminez v. State*, 953 S.W.2d 293, 297 (Tex. App.—Austin

1997, pet. ref'd). And circumstantial evidence suffices if reasonable inferences taken from it prove a disputed fact beyond a reasonable doubt. *See id.*

In *Jiminez*, the jury convicted the defendant of causing the complainant's sexual organ to contact his mouth. *Id.* at 296. But when testifying, the complainant said that the defendant rubbed his face against her naked genitals and that she felt his nose inside them, but even she could not say whether his mouth had contacted her sexual organ. *Id.* On appeal the defendant attacked the evidentiary sufficiency. *See id.* After reviewing the evidence, the court overruled his sufficiency complaint, holding that a rational factfinder could infer beyond a reasonable doubt that when he rubbed his face against the complainant's genitals and penetrated them with his nose, he also caused his mouth to contact her sexual organ. *See id.* at 297.[3]

So assuming McBride's DNA evidence did not directly confirm digital penetration, it circumstantially made digital penetration much more likely. *See id.*

Because other evidence repeatedly informed the jury that McBride had engaged in oral sex in addition to digital penetration, we hold that McBride waived any complaint about Kramer's testimony and the DNA evidence. *See Leday*, 983 S.W.2d at 718; *Cantrell*, 2005 WL 1119808, at *5; *see also* Tex. R. Evid. 403, 404(b).

We overrule McBride's second issue.

---

[3]On the same facts, the defendant also lost his factual-insufficiency complaint. *Id.* at 297–98.

**Conclusion**

Having overruled McBride's issues, we affirm the trial court's judgment.


/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 6, 2018

10