

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No.04-18-00744-CR

Montral **GROSS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR1337
Honorable Sid L. Harle, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Irene Rios, Justice

Delivered and Filed: June 19, 2019

AFFIRMED

A Bexar County, jury found Appellant Montral Gross guilty of sexual assault and the trial court subsequently assessed punishment at twenty-six years' confinement in the Institutional Division of the Texas Department of Criminal Justice.  In his sole issue on appeal, Gross contends the evidence was legally insufficient to support the jury's finding that he committed the act of sexual assault.  We affirm the trial court's judgment.

## LEGAL SUFFICIENCY OF THE EVIDENCE

**A.      Standard of Review**

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence . . . ." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13; *King*, 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it alone resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 15; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.— Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

**B.      Arguments of the Parties**

Gross contends no rational trier of fact could have found beyond a reasonable doubt that he committed sexual assault due to the lack of DNA evidence presented and L.H.'s alleged inconsistent and implausible testimony.  Gross likewise contends that the same jury acquitting him of the charges of kidnapping and burglary could not have rationally convicted him of sexual assault.

The State counters that Gross's argument, relying on L.H.'s testimony and the DNA evidence, is the same evidence that links Gross to the crime.

**C.      Sexual Assault**

Pursuant to the indictment and the charge of the court, the State was required to prove the following:

> [O]n or about the 12th Day of March, 2016, MONTRAL GROSS, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the MOUTH of [L.H.], hereinafter referred to as the complainant, by THE DEFENDANT'S SEXUAL ORGAN, said act having been committed without the consent of the complainant, in that THE DEFENDANT COMPELLED THE COMPLAINANT TO SUBMIT AND PARTICIPATE BY THE USE OF PHYSICAL FORCE AND VIOLENCE;
>
> REPEAT OFFENDER ENHANCEMENT ALLEGATION
>
> And it is further presented in and to said Court that, before the commission of the offense alleged above, on the 25th day of FEBRUARY, A.D. 2005, in Cause No. 0815708D, in Tarrant County, Texas, the defendant was convicted of the felony of POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE OF FOUR GRAMS OR MORE, BUT LESS THAN 200 GRAMS;

*See* TEX. PENAL CODE ANN. § 22.021.  We limit our review of the evidence pertaining to the elements of the alleged sexual assault on March 12, 2016.  *See id*. § 22.021 (requiring "intentionally or knowingly, causes the penetration of the anus, mouth, or sexual organ of another person by any means, without that person's consent").

**D.     Evidence at Trial**

*1.     L.H.*

L.H. testified that in March of 2016, Gross was her cousin Shacole's boyfriend. On the night of March 11, 2016, L.H. celebrated her birthday with her boyfriend Brandon, a family friend, and Gross. Late that night, after she returned home, L.H. testified she was alone when she was awakened by a "loud bang"—the sound of her back door being kicked open—followed by something hitting her temple. L.H. testified the attacker was Gross, who kept asking for Brandon and saying, "I'm going to do to you what I'm going to do to him." Gross then tied her up with an extension cord, beat her, and questioned her regarding Brandon's whereabouts and money Brandon allegedly stole. Gross then untied L.H., grabbed her by the hair, and pulled her outside to his vehicle.

When Gross pushed L.H. into the vehicle, her cousin Shacole was sitting in the driver's seat. Gross told Shacole to move to the passenger side of the vehicle and forced L.H. into the back seat of the vehicle. Gross drove to his apartment, while continuing to hold L.H. down by her hair and preventing others from seeing L.H. in his vehicle. When they arrived at Gross's house, Gross tied L.H. with rope and demanded that she call Brandon regarding the stolen money. When Brandon did not answer, L.H. texted Brandon that Gross was trying to kill her. Brandon responded that he was calling the police. Gross hit L.H. again, dragged her to the bathroom, and used clippers and cut L.H.'s hair down the middle of her head—"just buzzed it right off."

As they were walking out of the bathroom, Gross threw L.H. on the floor, hit her again, and instructed Shacole to untie her. Shacole returned to the living room; Gross continued to hit L.H., tied her up again, pushed her down, and forced her to perform oral sex on him. When Gross left the room, he instructed Shacole to untie L.H. L.H. testified that she grabbed a white shirt and cleaned herself off; officers later preserved the shirt for evidence.

L.H. testified that Gross and Shacole returned to the couch and she sat on the floor crying. Eventually, Shacole said she had to leave to take her daughter to the doctor and Gross "let her leave." Shortly after Shacole left, however, Gross called her back to pick up L.H. Shacole was trying to talk to L.H. when Gross also exited the house and decided to drive the vehicle. Gross drove L.H. back to her apartment. When he saw officers around her building, he dropped her off around the corner from her apartment. L.H. ran to the apartment and reported the incident to the officers. L.H. subsequently identified Gross's residence, provided officers with a statement, and subjected herself to a sexual-assault examination at the hospital.

On cross-examination, defense counsel questioned L.H. regarding alleged inconsistencies and impossibilities in her testimony. L.H.'s written statement asserted she was "hogtied," meaning by her hands and feet; but her testimony did not mention her feet. L.H. also testified Gross grabbed her by her hair with both hands and did not let go from the time he took her outside her home, to his car, and to the inside of his residence. Defense counsel opined it was impossible for Gross to move L.H. from the backseat of his car, to his driver's seat, while maintaining hold of her hair. Defense counsel further argued the improbability that L.H. would not call 9-1-1, or her family, when she was briefly left alone, untied, and with her phone.

*2.    San Antonio Police Officer Ronald Rodriguez*

On March 12, 2016, at approximately 9:30 a.m., San Antonio Police Officer Ronald Rodriguez responded to an apartment complex regarding a disturbance call. Officer Rodriguez testified that as he approached the apartment in question, he saw a large, visible footprint on the front of the damaged door. He noted the door was not secured and had been "kicked in." Officer Rodriguez entered the apartment, with his weapon drawn. Although the apartment was empty, the officer testified the "shower was on." After clearing the apartment, the officer attempted to locate

the resident, or someone with the ability to secure the apartment. It was during this time when L.H. approached him and reported that she had been assaulted.

Officer Rodriguez described L.H. as distraught, overwhelmed, and her clothes were in disarray. "[S]he was in distress, severe distress, scared. I believe she had watery eyes. She was—obviously there's some kind of event. I would say traumatic." He also noted that L.H. had a significant amount of hair missing from the top of her head. L.H. reported that Gross forced her into his vehicle, took her to a different location, and forced her to perform oral sex against her will. L.H. could not provide the officer with an address, but L.H. was able to navigate the officer in his vehicle to the location where Gross had taken her. Officer Rodriguez then took L.H. for a medical examination and to provide a statement.

On cross-examination, the officer conceded that although photographs of the apartment door were taken, no forensics were performed on the shoe mark. Additionally, his report did not contain any mention of abrasions, bruises, or scars on L.H.'s face, head, wrists, or legs.

### 3.     *Linda Witte*

Linda Witte was the Sexual Assault Nurse Examiner who examined L.H. Witte testified that she performed a physical examination of L.H. and noted several bruises, scratches, and tender areas about her body. Additionally, during the examination, L.H. reported that Gross forced her to perform oral sex on him. Witte swabbed L.H.'s mouth, neck, and chest.

During cross examination, defense counsel highlighted that with all the alleged trauma, he found it odd that Witte only found tenderness on L.H.'s face and arm and a bruise on her wrist.

### 4.     *Bexar County Crime Lab DNA Analyst Nicole Morales*

Nicole Morales, an employee at the Bexar County Crime Lab, testified that as a DNA analyst she routinely receives evidence from law enforcement. The first step in her analysis is to screen the sample and determine whether a genetic profile can be generated from the DNA sample.

In the present case, Morales examined evidence on two different occasions. On July 1, 2016, Morales was asked to examine peroral swabs (around the mouth), chest swabs, neck swabs, hand swabs, nail swabs, and fingernail scrapings. The samples also included a known saliva sample from L.H. Morales testified the peroral, mouth, chest, and neck swabs all tested positive for the presence of semen. In other words, a genetic profile could be generated.

In August of 2018, Morales received a buccal swab from the San Antonio Police Department identified as collected from Montral Gross. Morales was able to compare the chest swab sample, collected from L.H., with Gross's known buccal sample. Based on her evaluation, all 22 loci, or locations on the genes, matched between the two samples. Although Morales could not positively testify that Gross was the only possible contributor of the semen sample, she opined the same was "a very rare profile in the population." In explaining how unlikely it was that another individual left the same DNA sample, Morales testified the DNA genetic profile was one in 491.9 octillion—with twenty-seven zeros.

### E. Discussion

Gross's sufficiency challenge amounts to an attack on L.H.'s credibility. Although some inconsistencies may have existed in L.H.'s account of the incident and the extent of her injuries, it was within the jury's sole purview to resolve any conflicts in the evidence. *See Linney v. State*, 401 S.W.3d 764, 772 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("[C]redibility of both the complainant and the defendant is a central, often dispositive issue in . . . 'he said, she said' trials."). Here, the jury chose to believe L.H.'s version of events. *See Cosio v. State*, 353 S.W.3d 766, 777–78 (Tex. Crim. App. 2011) (concluding the jury was not persuaded by defendant's denials because if they had been, they would have acquitted him). This court will defer to the jury's "responsibility . . . to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Balderas v. State*, 517 S.W.3d 756,

766 (Tex. Crim. App. 2016) (quoting *Hooper*, 214 S.W.3d at 13); *see also Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (concluding that resolving conflicts in the testimony is within the jury's province); *Beltran v. State*, 517 S.W.3d 243, 250 (Tex. App.—San Antonio 2017, no pet.). Thus, Gross's claim that L.H.'s version of events does not make sense plays no part in this court's sufficiency review. *See Balderas*, 517 S.W.3d at 766.

L.H. testified that Gross sexually assaulted her, punched her in the face, and cut her hair. She further testified that Gross did all of these things against her will and in an effort to reclaim money from her boyfriend. *See Beltran*, 517 S.W.3d at 250 (holding victim's testimony that she was forced to have sex was sufficient to establish elements of sexual assault); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.) (holding testimony of victim regarding sexual offenses was sufficient evidence to support conviction); *see also Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding the victim's testimony alone, if believed, is legally sufficient to support a conviction). We conclude that viewing the evidence in the light most favorable to the verdict, the jury could have found the essential elements of sexual assault beyond a reasonable doubt. *See Adames*, 353 S.W.3d at 860; *Gear*, 340 S.W.3d at 746.

Accordingly, we overrule Gross's sole issue on appeal.

Patricia O. Alvarez, Justice

Do Not Publish