# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00136-CR

---

**Steven Lee Lightsey a/k/a Stephen Lee Lightsey, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 16-217, THE HONORABLE CHRIS SCHNEIDER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Stephen Lightsey of two counts of indecency with a child by sexual contact and three counts of sexual assault of a child, committed against N.M.; assessed a sentence of ten years' imprisonment; and recommended Lightsey's placement on community supervision. *See* Tex. Penal Code §§ 21.11, 22.011. The district court rendered judgments on the verdict for all five counts and placed Lightsey on community supervision for ten years. On appeal, Lightsey contends that the evidence was insufficient to support his conviction; that defense counsel provided ineffective assistance during trial; and that the district court erred by excluding evidence of N.M.'s prior sexual history, admitting "bolstering" expert testimony on delayed outcries, sustaining an asked-and-answered objection, and excluding a document from evidence during the cross-examination of N.M., and ordering reimbursement of court-appointed attorney's fees. We will affirm the district court's judgments of conviction.

## BACKGROUND

N.M. met Lightsey in 2015, when she was in eighth grade and fourteen years old. Lightsey, who was thirty-one or thirty-two at the time, was an acquaintance of N.M.'s parents and was dating N.M.'s eighteen- or nineteen-year-old cousin. N.M. began going to Lightsey's house in Caldwell County with her cousin and spending the night there when her cousin did. N.M. befriended Lightsey's daughter and his niece, who visited Lightsey almost every weekend that N.M. was there. N.M. continued going to Lightsey's house to "hang out" even after her cousin and Lightsey stopped dating. N.M. stated that she would spend the weekends there, from Friday after school until Sunday night, with Lightsey sometimes picking her up from school. N.M.'s parents allowed N.M. to spend time at Lightsey's house because it was their understanding that Lightsey's daughter and niece were also there. Lightsey testified that when N.M. visited, she would discuss her problems and homework with him.

Beginning in May or June of 2015, Lightsey began sending text messages to N.M. and contacting her through Facebook Messenger and later, through Snapchat. A forensic scientist with the Texas Department of Public Safety Crime Laboratory performed an examination of the data on a phone that N.M. said she had since January of her eighth-grade year and provided an extraction report that was admitted into evidence. The report showed that from January to April 2016, there were 2,215 contacts between N.M.'s phone and Lightsey's phone. Lightsey testified that some text messages sent to N.M. in the "wee hours of the morning" were from him, but he noted that she confided in him, and he considered the messages part of mentoring her. Lightsey acknowledged that in some text messages, he and N.M. said that they loved each other. Lightsey denied that anyone that he said he had mentored or tutored stayed over at his house unchaperoned.

2

N.M. testified that while at Lightsey's house sometime after she met him, Lightsey asked her to lie down on a three-seater couch in the living room with him, and he began kissing her and taking off her pants. She stated that Lightsey was lying on his side, while she was lying on the edge of the couch with her back to his stomach and her head over her shoulder as they were kissing. After Lightsey removed her pants, she and Lightsey "started having sex," which she described as "his penis going inside my vagina." After the first time this occurred, Lightsey told her, "I better not have cops knocking at my door in the morning over this."

N.M. acknowledged that through her eighth-grade year from 2015 into 2016, she and Lightsey had sexual contact almost every time she went to his house. N.M. testified about Lightsey's acts of sexual abuse that occurred in the living room or bedroom when others in his house were asleep, including when "his tongue would be touching [her] vagina" and when he would put his penis in "[her] butt." When N.M. and Lightsey were not alone in the room—such as when his daughter and her boyfriend were sleeping on an air mattress beside the bed— Lightsey would touch "[her] boobs" and the inside and outside of her vagina with "his hands." Additionally, N.M. testified that Lightsey put his penis in "[her] mouth" and that she "gave him blow jobs" in his truck. N.M. considered them to be boyfriend and girlfriend and in a "sexual relationship." She stated that Lightsey told her not to tell anyone what was going on and that she thought he said that "so he didn't get in trouble."

Lightsey would include N.M. in group activities with his daughter and others, including attending a softball tournament in September, going to the Trail of Lights in December, and going out to eat in the summer. N.M. stated that she stayed at Lightsey's house after those events and they "had sex." Lightsey included N.M. in other events such as Rebel Fest at Camp Ben McCullough, a military exercise in Bastrop, bowling, and an overnight fishing trip

to Port Aransas in February or March. Photographs showing Lightsey and N.M. at some of those events were admitted into evidence. In a photograph taken after playing in some mud at Rebel Fest, Lightsey is shown wearing shorts and shirtless standing next to N.M., who is wearing a bikini top and shorts. The palm and fingers of Lightsey's left hand are covering her face and his right arm is hanging around her neck. The witnesses at trial disputed whether the photograph showed that the fingers of Lightsey's right hand were on or near N.M.'s breast. N.M. could not recall if Lightsey was touching her breast, but she said, "[i]t looks like it" from the photograph. N.M. agreed that Lightsey's arm was hanging and not touching her.

The last weekend of April 2016, N.M. told her parents that she, Lightsey, his daughter, his niece, and another girl were planning to go to a car racetrack. N.M. testified that she told her parents that the other girls would be there because Lightsey told her so. N.M.'s parents allowed her to go because "[t]he ones she hung out with at [Lightsey]'s" house would be there. They were not. On the evening of the racetrack outing, N.M.'s mother had a "gut feeling" that "something was wrong." She left work and went with N.M.'s father to the racetrack, where N.M. was with Lightsey and two other adults that the parents did not know. After Lightsey and N.M.'s mother had "a pretty hefty exchange of words" in the racetrack parking lot, N.M. left with her parents.

A few hours after leaving the racetrack, N.M.'s mother took N.M.'s phone and went through it. She was concerned about photographs on N.M.'s social-media accounts showing only Lightsey and N.M. next to each other and text messages between them that occurred at all hours of the day and night. Going forward, N.M.'s parents forbade N.M. from having any contact with Lightsey.

4

When N.M. returned to school after that weekend, she went to the school nurse's office crying and stating "that her parents were upset about a relationship she was in." The nurse testified that N.M. said the relationship was with "her uncle" but then said he was "not really [her] uncle." The nurse asked N.M. if she was being harmed or forced to do anything she did not want to, which N.M. denied. N.M. told the nurse that "she wanted to run away or die to get away from it all." Consistent with school policy, after N.M. expressed those suicidal feelings, the nurse evaluated N.M.'s safety, did not leave her alone, and notified the school counselor and N.M.'s parent. N.M. was admitted to a psychiatric hospital where she stayed for four days, and her parents visited her. During their visit, N.M.'s mother told N.M. that Lightsey "had told us everything"[1] and that they "needed to hear her side of it." N.M. acknowledged the abuse, telling her parents that she "had sex with" Lightsey. N.M.'s mother contacted law enforcement, and N.M. had a forensic interview at a child advocacy center. A grand jury indicted Lightsey for three counts of sexual assault of a child and two counts of indecency with a child, and the case proceeded to trial.

During trial, the forensic interviewer testified that it is her job to interview children and gather the information that they are willing to tell her. She stated that at the end of N.M.'s interview there was cause for concern about her disclosure of sexual abuse. N.M. also indicated to the forensic interviewer that she was in love with Lightsey. During cross-examination of the forensic interviewer, Lightsey elicited testimony about N.M.'s prior sexual behavior, asking if the interviewer had compared Lightsey's interaction with N.M. with what had been done to her by "a kid that she had some interaction with." The State made an untimely

---

[1] During trial, N.M.'s mother admitted that this "was not the truth" and that the information that caused her concern—and resulted in her contacting law enforcement—was what she learned from N.M.

objection, and the district court allowed questions as to N.M.'s past sexual behavior with a juvenile, a classmate that she was dating.

Lightsey also attempted to introduce evidence of N.M.'s past sexual behavior during the cross-examination of her father. Lightsey began asking, "So you . . . reported a crime, did you not, in August of 2015 months—nine months prior—." Anticipating discussion of a matter addressed in its motion in limine, the State objected and asked to approach the bench. The district court recessed the jury. Lightsey then stated his intent to ask about a report that N.M. "was raped two years prior." He had not informed the district court beforehand of his intent to offer that evidence. The State objected under Texas Rule of Evidence 412 which, subject to certain exceptions, prohibits admission of evidence concerning "reputation or opinion evidence of a victim's past sexual behavior" and "specific instances of a victim's past sexual behavior." *See* Tex. R. Evid. 412(a), (c). The district court sustained the objection and ruled that evidence of N.M.'s past sexual behavior would not be admissible without a hearing before the court, outside jury's presence. *See id*. R. 412(c).

Lightsey then attempted to introduce evidence of N.M.'s past sexual behavior during the cross-examination of her mother. Lightsey began asking, "Why would you have the need to take her to a doctor in August of 20—." The State objected and asked to approach. At the bench, Lightsey stated his intent to ask why N.M.'s mother was taking N.M. to an "OB/GYN" around the same time frame that the 2015 sexual assault was reported. He had not informed the district court beforehand of his intent to offer that evidence under Rule 412, and the State objected to its admission as involving "allegations of prior sexual acts." The district court sustained that objection.

On re-direct, the State asked N.M.'s mother whether one of Lightsey's family members ever expressed concern about the nature of the relationship with N.M. After the district court overruled Lightsey's hearsay objection, N.M.'s mother testified that Lightsey's brother had expressed concern. She also testified that Lightsey's brother, the brother's wife, and their new baby were living with Lightsey when N.M. was spending a lot of time at his house.

After releasing the jury at the end of the first day of trial, the district court held a hearing to consider a proffer of testimony from a counselor with the Hays County Child Advocacy Center concerning delayed outcries of abuse and some behavioral characteristics of sexual-abuse victims. Lightsey objected to the scientific reliability of her testimony, contending that there was no evidence of the "scientific reliability of the science upon which she relies" and no evidence of "the scientific community accepting her premises that she's testifying on that's required to render an expert opinion on any of this." The district court disagreed and allowed the counselor to testify. On direct examination, the counselor made no comment about N.M.'s truthfulness in this case or the truthfulness of sexual-abuse victims generally. But on cross-examination, Lightsey asked, "So, of your 216 clients how many did you find had not been abused as stated?" She responded, "A very small amount," and noted that some were witnesses to abuse or a crime.

N.M. was the State's last witness, and she described the incidents of sexual abuse summarized above. On cross-examination, Lightsey asked N.M. if her parents had ever confronted her before April 2016 about her having any kind of relationship with Lightsey. She replied that they had done so once, "When [Lightsey']s brother told my mom and dad that we slept in the same bed." She told her parents that was not true.

7

Lightsey also asked N.M. questions about whether she had been "left alone with her mother" during a meeting with a therapist at the psychiatric hospital, which N.M. denied stating, "There was always another person in the room." Lightsey eventually asked, "And then you don't remember the woman actually having to leave the room so your mom and you could talk some more before she came back in?" The State objected that the question had been asked and answered, noting that N.M. "has been very clear she was not left alone with her mother." The district court sustained the objection, and Lightsey immediately resumed his cross-examination. Lightsey later asked N.M. about a certain page of text messages to his phone, but N.M. denied that she authored them. The State objected to admission of the text messages based on N.M.'s testimony that she lacked knowledge of them, which the trial court sustained. Lightsey proceeded directly with his cross-examination of N.M. after the ruling.

At the close of the State's case, Lightsey moved for a directed verdict on all five counts charged. The district court denied the motion. Lightsey then called the medical-records director for the psychiatric hospital where N.M. was treated. Through her sponsoring testimony, Lightsey offered N.M.'s medical records into evidence as Defendant's Exhibit 4. Lightsey did not notify the district court that the unredacted records referred to N.M.'s prior sexual behavior, as required by Texas Rule of Evidence 412(c), and Defendant's Exhibit 4 was admitted without objection.

Lightsey later called a psychologist specializing in child-sex abuse cases to testify. During the psychologist's testimony, Lightsey asked about N.M.'s prior sexual behavior referenced in the records from the psychiatric hospital: "And at her intake what kind of history does she give them regarding past sexual abuse?" The State objected, noting the court's prior instruction.

8

After the district court recessed the jury, Lightsey pointed out that he was asking the psychologist about the medical record that he reviewed, which was in evidence and included a reference to "a trauma history of sexual abuse two years ago" when N.M. was "raped by [a] paternal cousin." The State requested redaction of the exhibit and said that it presumed the defense had abided by the court's prior ruling that evidence of N.M.'s past sexual behavior would not be admissible without a hearing. The district court granted the State's request for redaction of Defendant's Exhibit 4 before it was provided to the jury. A "Pre-Admission Exam & Certification," an April 28, 2016 "History and Physical," and the "Psychiatric History" section of a "Psychiatric Evaluation" in Defendant's Exhibit 4 were redacted for the jury.

However, other references to N.M.'s history of rape and sexual assault remained. Defendant's Exhibit 4—in the "redacted" version provided to the jury[2]—included a "Discharge Summary" with a section titled "History of Present Illness" containing the exact references that Lightsey had quoted in his argument for admission of the record: "a trauma history of sexual abuse two years ago" when N.M. was "raped by [a] paternal cousin." Defendant's Exhibit 4 also included a "Diagnostic Formulation" section of a "Psychiatric Evaluation" that noted a "hx of sexual assault (2 yrs ago)."

When the trial concluded, the jury convicted Lightsey on all counts as charged, assessed a ten-year prison term as punishment, and recommended suspension of his term of confinement. The district court rendered judgments on the verdict, placed Lightsey on community supervision for ten years, and told Lightsey at the punishment hearing that "as a condition of probation you will be required to reimburse the county for Court costs, court

---

[2] The record also contains a Defendant's Exhibit 4A, an unredacted version of N.M.'s medical records from the psychiatric hospital that was not provided to the jury but included only for appellate review.

appointed attorney[']s fees." The judgments of conviction incorporated by reference the district court's order on the conditions of community supervision, which showed that the amount of attorney's fees was "TBD," or had yet to be determined. The district court later amended its order on the conditions of community supervision, assessing no amount "0.00" of court-appointed attorney's fees.

Lightsey filed a motion for new trial presenting a one-sentence complaint that the verdict was "contrary to the law and evidence." The district court denied the motion. After Lightsey appealed his conviction, he moved for substitution of his court-appointed appellate counsel with counsel he retained. We granted the motion and both parties filed amended briefs.

## DISCUSSION

**Sufficiency of Evidence**

On appeal, Lightsey challenges the sufficiency of the evidence supporting his convictions.[3] Due process requires that the State prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged. *Jackson v. Virginia*, 443 U.S. 307, 314 (1979). Under a legal-sufficiency standard of review, we consider all the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19; *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "Beyond a reasonable doubt, however, does not require the State to disprove every conceivable alternative to a defendant's

---

[3] We first address Lightsey's sixth issue challenging the sufficiency of the evidence supporting his conviction because it is the ground potentially affording him an acquittal, the greatest possible relief. *See Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991) (concluding that court of appeals should not have determined defendant's ineffective-assistance-of-counsel issue without first reviewing sufficiency of evidence supporting his convictions); *Davis v. State*, 413 S.W.3d 816, 820 (Tex. App.—Austin 2013, pet. ref'd).

10

guilt." *Ramsey v. State*, 473 S.W.3d 805, 809, 811 (Tex. Crim. App. 2015). Our legal-sufficiency review encompasses all evidence that the trier of fact was permitted to consider, regardless of whether such evidence was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Young v. State*, 591 S.W.3d 579, 587 (Tex. App.—Austin 2019, no pet.).

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony presented at trial. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). We defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We apply the same standard to direct and circumstantial evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett*, 552 S.W.3d at 262. Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.* As an appellate court, our role "is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018).

A child victim's uncorroborated testimony is sufficient to support a conviction for sexual assault of a child or a conviction for indecency with a child. *See Beltran v. State*, 517 S.W.3d 243, 250-51 (Tex. App.—San Antonio 2017, no pet.) (affirming conviction for sexual assault of child); *Jones v. State*, 428 S.W.3d 163, 170 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (affirming conviction for indecency with child); *see also* Tex. Code Crim. Proc. art. 38.07 (addressing child-sexual-abuse convictions generally). A person commits the second-degree

11

felony offense of sexual assault of a child if the person intentionally or knowingly "causes the penetration of the anus or sexual organ of a child by any means." Tex. Penal Code § 22.011(a)(2)(A), (c)(1), (f). A person commits the second-degree felony offense of indecency with a child by sexual contact if the person engages in sexual contact with the child or causes the child to engage in sexual contact with the intent to arouse or gratify the sexual desire of any person. *See id.* § 21.11(a)(1), (c), (d).

Here, each count of the indictment charged Lightsey with a separate act of sexual abuse against N.M. Count I of the indictment alleged that Lightsey penetrated N.M.'s sexual organ with his sexual organ on or about August 17, 2015, when she was younger than 17. Count II alleged that Lightsey penetrated N.M.'s sexual organ with his finger on or about September 1, 2015, when she was younger than 17. Count III alleged that Lightsey penetrated N.M.'s mouth with his sexual organ on or about November 15, 2015, when she was younger than 17. Count IV alleged that Lightsey engaged in sexual contact with N.M. by touching her breast on or about January 1, 2016, when she was younger than 17. Count V alleged that Lightsey engaged in sexual contact with N.M. by causing N.M. to touch Lightsey's genitals on or about March 5, 2016, when she was younger than 17. Use of "on or about" language in an indictment authorizes the State to prove a date other than the one alleged in the indictment as long as the date is before the presentment or return of the indictment and within the statutory limitation period. *Sanchez v. State*, 400 S.W.3d 595, 600 (Tex. Crim. App. 2013); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).

12

During the trial in 2018, N.M. testified that she was 17 years old.[4] According to her review of her Facebook history, she met Lightsey in 2015. N.M. was in eighth grade and 14 years old at the time. Lightsey testified that he moved to Caldwell County in March 2015 and that "[i]n 2015, [he] would have been 31, [or] 32." N.M. acknowledged that through her eighth-grade year from 2015 into 2016, she and Lightsey had sexual contact almost every time she went to his house, "almost every weekend that [she] would be over there." N.M. testified about Lightsey's acts of sexual abuse that occurred in the living room or bedroom when others in his house were asleep, including "[b]y his penis going inside [her] vagina," when "his tongue would be touching [her] vagina" and when he would put his penis in "[her] butt." N.M. also testified that when she and Lightsey were not alone in the room, he would touch "[her] boobs" and the inside and outside of her vagina with "his hands." Additionally, N.M. testified that Lightsey put his penis in "[her] mouth" and that she "gave him blow jobs" in his truck.

Given the repeated sexual encounters occurring from 2015 to 2016, a rational jury could have inferred that when Lightsey engaged in the vaginal, digital, and oral sex acts with N.M., he did so knowingly or intentionally. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) ("explaining that "[a] jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused" (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999))); *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980) (recognizing that court "has consistently held that knowledge and intent can be inferred from conduct of, remarks by[,] and circumstances surrounding the acts engaged in by[,] an accused"). A rational jury also could have inferred that when Lightsey touched N.M.'s breast

---

[4] Medical records admitted into evidence from the psychiatric hospital where N.M. was treated specify her date of birth.

13

and vagina while others were in the room at his house and when he had N.M. perform oral sex on him in his truck, he did so with intent to arouse or gratify his sexual desire. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981) (explaining that "the requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks[,] and all surrounding circumstances"); *Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.) ("Intent can be inferred from conduct alone, and no oral expression of intent or visible evidence of sexual arousal is necessary."). Further, a rational jury could have inferred Lightsey's consciousness of guilt from his statement to N.M. that he did not want the "cops knocking at his door in the morning over this" and his instruction to N.M. not to tell anyone what was going on.

Although Lightsey points to inconsistencies in N.M.'s testimony, resolution of any such inconsistencies was within the province of the jury, and we defer to their resolution of them. *See Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638; *Phea v. State*, 190 S.W.3d 232, 237 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (affirming defendant's convictions for indecency with child by sexual contact and sexual assault of child and noting that "jury elected to believe the complainant's testimony and chose to reconcile any discrepancies in that testimony in her favor"); *see also* Tex. Code Crim. Proc. art. 38.04 (providing that jury is exclusive judge of facts proved and of weight to be given to testimony unless law provides that proof of particular fact is to be taken as conclusive or presumptive proof of another fact's existence, or where law directs certain degree of weight to be attached to certain species of evidence). We conclude that the evidence presented during trial, considered in the light most favorable to the jury's verdict, was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Lightsey committed the charged offenses of indecency with a child and sexual assault of a child against

14

N.M. *See Phea*, 190 S.W.3d at 237; *see also* Tex. Penal Code §§ 21.11(a)(1), (c), (d), 22.011(a)(2)(A), (c)(1), (f); *Arroyo*, 559 S.W.3d at 487 (restricting appellate court's role to guarding against "rare occurrence" when factfinder fails to act rationally). Accordingly, we overrule Lightsey's sixth issue.

**Ineffective Assistance of Counsel**

Lightsey complains about three instances during trial when he alleges that he received ineffective assistance from his counsel. The first instance occurred during the cross-examination of N.M.'s mother, when she was asked about moving away from Hays County. She responded that "Mr. Lightsey would not quit driving by the house. So we moved out. We took her out of Hays County." On redirect, when the State asked questions about witnesses who saw Lightsey driving by where N.M. was staying in Hays County, Lightsey's counsel did not object.

The second instance occurred during a lunch break taken after N.M.'s mother began her testimony, when a juror approached the bench and stated, "I don't know if I can do this."[5] She said that seeing N.M.'s mother crying made her emotional. The district court said, "You have to stick with us." After the lunch break, the district court informed Lightsey and counsel of the juror's statements. Lightsey's counsel did not request a hearing to determine whether this juror had become "disabled from sitting" within the meaning of article 36.29. *See* Tex. Code Crim. Proc. art. 36.29.

The third instance occurred during the testimony of a former investigator for the Department of Family and Protective Services, who discussed a prior Child Protective Services investigation against Lightsey for a report of alleged sexual abuse of his biological daughter.

---

[5] This juror expressed her opinion during voir dire that the goal of the justice system is to rehabilitate a person who does wrong and get them help.

15

The daughter was living in her mother's home at the time and did not make an outcry when she spoke to a caseworker. After an investigation, the abuse allegation was ruled out, and the case was closed. Lightsey's counsel did not object to this testimony.

Lightsey's ineffective-assistance-of-counsel complaint faults his attorney for: (1) not objecting to N.M.'s mother's testimony that others told her that they had seen Lightsey driving around N.M.'s neighborhood; (2) not inquiring into the juror's ability to continue after she stated that she did not know if she could "do this"; and (3) not objecting to testimony about an allegation that Lightsey sexually abused his biological daughter that was ruled out. To prevail on a claim of ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that counsel's performance fell below the standard of prevailing professional norms and but for counsel's deficiency, there is a reasonable probability that the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Thompson*, 9 S.W.3d at 813. Our review of counsel's representation is highly deferential, and counsel is afforded a "strong presumption" that her conduct fell within the wide range of reasonable professional assistance. *Ex parte Lewis*, 537 S.W.3d 917, 921 (Tex. Crim. App. 2017); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

To defeat this presumption, allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). The record on direct appeal is generally insufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable

16

and professional. [6] *Id.* (citing *Bone*, 77 S.W.3d at 833). Further, trial counsel should generally be afforded an opportunity to explain her actions before being found ineffective. *Id.* "In the face of an undeveloped record, counsel should be found ineffective only if [her] conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Without evidence of trial counsel's reasons for the challenged conduct, an appellate court will commonly "assume a strategic motivation if any can possibly be imagined." *Ex parte Saenz*, 491 S.W.3d 819, 828 (Tex. Crim. App. 2016) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Here, as to all three bases for Lightsey's ineffective-assistance complaints—the lack of objection to testimony from N.M.'s mother about others having seen Lightsey driving around N.M.'s neighborhood, the lack of inquiry into the juror's ability to continue, and the lack of objection to the testimony about the ruled-out allegation of sexual-abuse—defense counsel has been afforded no opportunity to explain her actions. *See Prine*, 537 S.W.3d at 117. Lightsey contends that there could be no "strategical" reason for defense counsel's actions. However, it is imaginable that there were strategic reasons for them. *See Saenz*, 491 S.W.3d at 828. For instance, defense counsel may have determined that an objection to testimony about others who saw Lightsey driving around N.M.'s neighborhood would have been futile and would only draw attention to that evidence because the jury had already heard N.M.'s mother testify without objection that their family moved from Hays County because Lightsey "would not quit driving by the house." Further, defense counsel may have contemplated keeping the juror with the hope

---

[6] Ineffective-assistance-of-counsel claims are generally unsuccessful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Unlike other claims rejected on direct appeal, ineffective-assistance-of-counsel claims rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus. *Id.*

17

that she might favor community supervision if the case proceeded to punishment because she opined during voir dire that the goal of the justice system is rehabilitation and treatment for defendants who have done wrong. Finally, defense counsel may have considered the possibility that the "ruled out" sexual-abuse allegation against Lightsey—which was not supported by any outcry to an investigator—might fit with the defensive theory that the sexual-abuse allegation here was instigated by someone other than N.M. and that he was again falsely accused.

Without affording defense counsel the opportunity to explain her actions, we cannot say that Lightsey has shown on this record that his counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that her conduct was reasonable and professional. *See Prine*, 537 S.W.3d at 117; *Lewis*, 537 S.W.3d at 921; *Bone*, 77 S.W.3d at 833; *see also Garcia*, 57 S.W.3d at 440 (noting that defendant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong"). Accordingly, we overrule Lightsey's first issue.

**Evidence of N.M.'s Prior Sexual History**

Lightsey contends that the district court erred by excluding evidence of N.M.'s prior sexual history when it sustained the State's objections under Rule 412. Lightsey complains that: (1) he was not allowed to complete his question asking N.M.'s father about a report that N.M. "was raped two years prior"; (2) he was not allowed to complete his question asking N.M.'s mother why she was taking N.M. to an OB/GYN around the same time frame that the 2015 sexual assault was reported; and (3) the medical records in Defendant's Exhibit 4 should not have been redacted after they were admitted.

When the district court sustained the Rule 412 objection to Lightsey's questioning of N.M.'s father, the court specified that evidence of N.M.'s past sexual behavior would not be admissible without a hearing before the court, outside jury's presence. *See* Tex. R. Evid. 412(c). We review a trial court's ruling on Rule 412 evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* We will uphold the trial court's evidentiary ruling if it is correct under any applicable theory of law. *Id.*

As we have noted, Texas Rule of Evidence 412 generally prohibits admission of evidence concerning "reputation or opinion evidence of a victim's past sexual behavior" and "specific instances of a victim's past sexual behavior." *See* Tex. R. Evid. 412(a), (c). Rule 412(c), in relevant part, requires that "[b]efore offering any evidence of the victim's past sexual behavior, the defendant must inform the court outside the jury's presence." *Id.* We have applied Rule 412 to evidence concerning an alleged victim's nonconsensual sexual behavior. *Marx v. State*, 953 S.W.2d 321, 337 (Tex. App.—Austin 1997), *aff'd*, 987 S.W.2d 577 (Tex. Crim. App. 1999) (concluding that trial court did not err by sustaining objection to defendant's attempted question to witness on cross-examination about whether child victim had been sexually abused by uncle before offense for which defendant was being tried).

Here, the record reflects that Lightsey did not inform the district court outside the jury's presence of an intent to ask N.M.'s father about the reported rape or an intent to ask N.M.'s mother about the reason for taking N.M. to the gynecologist. Instead, Lightsey attempted to ask these questions during cross-examination in front of the jury, and the State raised its timely objections referencing Rule 412 and inquiry into "allegations of prior sexual acts." Because Lightsey did not provide notice to the district court before he began asking those

19

questions to N.M.'s parents, he failed to comply with a threshold requirement of Rule 412(c) for introducing that testimony. *See id.* (concluding that defendant failed to meet Rule 412's procedural requirement for introduction of evidence about alleged victim's previous sexual conduct because he did not inform trial court of his intention to inquire about previous sexual incident before asking witness about it and instead asked about incident in front of jury during cross-examination); *Golden v. State*, 762 S.W.2d 630, 632 (Tex. App.—Texarkana 1988, pet. ref'd) (noting that Rule 412 "explicitly predicates" admissibility of past-sexual-behavior evidence "upon the defendant previously informing the court, outside the presence of the jury, of his intention to introduce any evidence or propound any question concerning a victim's past sexual behavior" and concluding defendant "failed to meet this threshold requirement"). Lightsey cannot now complain about the exclusion of that evidence under Rule 412. *See Marx*, 953 S.W.2d at 337.

Lightsey also contends that because the State raised an untimely objection about his questions to the forensic interviewer and N.M.'s sexual history with a classmate she had been dating, the State "waived all [its] objections on 412 grounds." Citing *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984), Lightsey notes that trial counsel must object every time allegedly inadmissible evidence is offered. *See* Tex. R. App. P. 33.1(a). As we have noted, during cross-examination of the forensic interviewer, Lightsey elicited testimony about N.M.'s prior sexual behavior, asking if the interviewer had compared Lightsey's interaction with N.M. with what had been done to her by "a kid that she had some interaction with." Because the State's objection was untimely, the district court allowed questions as to N.M.'s past sexual behavior with her classmate.

We disagree that the State's untimely objection to Lightsey's questioning of the forensic interviewer about N.M.'s sexual history with a classmate created a blanket waiver of the State's prior, timely objections under Rule 412 as to Lightsey's proposed questioning of other witnesses (N.M.'s parents) about different events (the reported rape and the reason for the visit to the gynecologist). Lightsey's cited authority in *Hudson* does not hold otherwise.

Finally, as to the redaction of the medical records in Defendant's Exhibit 4, which were admitted into evidence and included a reference to "a trauma history of sexual abuse two years ago" when N.M. was "raped by [a] paternal cousin," Lightsey cannot show that the redactions constituted harmful error affecting his substantial rights because the jury was provided with the same information in the unredacted pages of that exhibit. *See* Tex. R. App. P. 44.2(b); *Lindsay v. State*, 102 S.W.3d 223, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("When a trial judge excludes cumulative evidence, it is harmless error."). As we have noted, other references to N.M.'s history of rape and sexual assault remained in the "redacted" version of Defendant's Exhibit 4. These included: (1) a "Discharge Summary" with a section titled "History of Present Illness" containing the exact references that Lightsey had quoted in his argument for admission of the record—"a trauma history of sexual abuse two years ago" when N.M. was "raped by [a] paternal cousin"; and (2) the "Diagnostic Formulation" section of a "Psychiatric Evaluation" that noted a "hx of sexual assault (2 yrs ago)."

Because Lightsey failed to show that the district court's rulings sustaining the Rule 412 objections to the questioning of N.M.'s parents were outside the zone of reasonable disagreement and because Lightsey cannot show that he was harmed by the exclusion of information from some pages of Defendant's Exhibit 4 that was included on other pages of that exhibit and provided to the jury, we overrule Lightsey's second issue.

21

**"Bolstering" Testimony on Delayed Outcries**

Lightsey complains that the district court erred by admitting "bolstering" testimony from the counselor with the Hays County Child Advocacy Center concerning delayed outcries of abuse. He points out that expert testimony is inadmissible when it decides an ultimate fact for the jury, such as a direct opinion on the truthfulness of a child complainant's allegations. *See Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). Such direct opinions on truthfulness are distinct from expert testimony concerning the common behavioral characteristics of children who have been abused, which may be admissible. *See Yount*, 872 S.W.2d at 708-09 (citing *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)); *Jessop v. State*, 368 S.W.3d 653, 691 n.61 (Tex. App.—Austin 2012, no pet.). Lightsey contends, "The question that must be resolved is whether the testimony concerning 'delayed outcry' is equivalent to testimony about 'truthfulness.'"

However, Lightsey's only complaint to the district court about the counselor's testimony during trial concerned the scientific reliability of her testimony—specifically, that there was no evidence of the "scientific reliability of the science upon which she relies" and no evidence of "the scientific community accepting her premises that she's testifying on that's required to render an expert opinion on any of this." Preservation of error is a systemic requirement. *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). To preserve a complaint for appellate review, a defendant must timely object and state the grounds for the objection with enough specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). If a defendant's complaint on appeal does not comport with the

22

objection he made at trial, error has not been preserved. *Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844.

Here, Lightsey's complaint on appeal that the counselor's testimony on delayed outcries bolstered N.M.'s truthfulness does not comport with the scientific-reliability objection he made during trial and was not preserved for our review. *See Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) ("Because the complaint on appeal does not comport with either of the trial objections, nothing is presented for review."). Moreover, the State elicited no "bolstering" opinion from the counselor as to the truthfulness of N.M. or of sexual-abuse victims generally. Only Lightsey asked the counselor how many of her clients she found "had not been abused as stated," drawing the response that it was "[a]very small amount." Lightsey is attempting to complain on appeal about an action he requested by eliciting the counselor's testimony responsive to his question. *See Stranberg v. State*, 989 S.W.2d 847, 848 (Tex. App.—Texarkana 1999, pet. ref'd) ("Where the defendant, by his questioning, causes the complained-of testimony, the error is considered invited."); *Jenkins v. State*, 948 S.W.2d 769, 776 (Tex. App.—San Antonio 1997, pet. ref'd) (noting that defense counsel invited error by eliciting much of hearsay testimony himself). Because Lightsey's complaint on appeal fails to comport with his objection during trial and because the testimony he complains of was elicited by his own questioning of the counselor, we overrule Lightsey's third issue.

**Confrontation Clause Complaint**

Lightsey also contends, for the first time on appeal, that the district court erred by: (1) sustaining an asked-and-answered objection when he asked N.M. questions about whether she had been "left alone with her mother" during a meeting with a therapist at the psychiatric

23

hospital; and (2) excluding a page of text messages sent to Lightsey's phone that N.M. denied authoring. Lightsey specifically complains that these rulings violated his right to confront and cross-examine witnesses against him under the United States and Texas constitutions. *See* U.S. Const. amends. VI (providing that accused in all criminal prosecutions shall enjoy right to be confronted with witnesses against him), XIV (making Sixth Amendment protections applicable to states); Tex. Const. art. 1, § 10.

However, because a defendant's Confrontation Clause complaint is subject to preservation requirements, failure to raise it with the trial court forfeits that complaint on appeal. *Wright v. Quarterman*, 470 F.3d 581, 586-87 (5th Cir. 2006) (noting that Texas law generally requires defendant to make specific Confrontation Clause objection to preserve such error); *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (holding that Confrontation Clause claims are subject to preservation requirements under Texas Rule of Appellate Procedure 33.1(a)(1)(A)); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding that defendant "failed to preserve error on Confrontation Clause grounds" by failing to assert that objection at trial); *Alford v. State*, 495 S.W.3d 63, 66 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding that defendant failed to preserve his complaint that he was denied his right under United States and Texas constitutions to confront and cross-examine complainant).

Here, the record reflects that Lightsey failed to raise his Confrontation Clause complaint with the district court and that he continued with his cross-examination of N.M. immediately after the district court ruled on the State's objections; thus, he has failed to preserve that complaint for our review. *See* Tex. R. App. P. 33.1(a); *Davis*, 313 S.W.3d at 347; *Paredes*, 129 S.W.3d at 535; *Alford*, 495 S.W.3d at 66. Accordingly, we overrule Lightsey's fourth issue.

24

**Reimbursement of Court-Appointed Attorney's Fees**

Finally, Lightsey contends that because of his prior indigent status, the district court erred by ordering reimbursement of court-appointed attorney's fees. The district court found Lightsey to be indigent and appointed counsel to represent him. But the district court's pronouncement of sentence in open court included an order that Lightsey reimburse Caldwell County for court-appointed attorney's fees "as a condition of probation."

Article 26.05(g) of the Code of Criminal Procedure authorizes a trial court to order a defendant to pay the cost of his court-appointed legal counsel if the court finds that the defendant has the financial resources to repay those costs in whole or in part. Tex. Code Crim. Proc. art. 26.05(g); *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013). A defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees. *Cates*, 402 S.W.3d at 251. After a court determines that a defendant is indigent, he is presumed to remain so for the duration of the proceedings in the case absent a material change in his financial circumstances. Tex. Code Crim. Proc. art. 26.04(p); *Cates*, 402 S.W.3d at 251.

Here, the amount that Lightsey was ordered to pay was not stated in the record. The district court's judgments of conviction contain no reference to attorney's fees, but state that "[t]he document setting forth the conditions of community supervision is incorporated herein by this reference." The district court's January 31, 2019 order on the conditions of community supervision showed that the amount of attorney's fees was undetermined: "Restitution $0; and/or compensation paid to appointed counsel TBD." However, the district court signed an amended order on the conditions of community supervision on January 14, 2020, specifying, "Restitution $0; and/or compensation paid to appointed counsel "$0.00." Because the record indicates that

25

the order on conditions of community supervision was amended to delete the requirement of payment for court-appointed counsel and the judgments of conviction incorporate that order, we conclude that any error in the initial assessment of court-appointed attorney's fees is moot. We overrule Lightsey's fifth issue.

## CONCLUSION

We affirm the district court's judgments of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed:   March 30, 2021

Do Not Publish