The STATE of Texas, Appellant,

v.

Richard Lee GARZA, Appellee.

No. 04–03–00488–CR.

Court of Appeals of Texas,
San Antonio.

June 2, 2004.

Discretionary Review Refused
Nov. 17, 2004.

Angela S. Goodwin, Asst. Atty. Gen., Austin, for Appellant.

Kimberly S. Keller, The Keller Group, San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: SARAH B. DUNCAN, Justice.

The State appeals the trial court's order granting Richard Lee Garza's motion for a new trial because Garza's counsel failed to challenge for cause or peremptorily strike Keith Adams, a juror who became the jury foreman. Because the court did not abuse its discretion, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Richard Lee Garza, a criminal defense attorney, was charged with three counts of aggravated sexual assault of his five-year-old niece. During voir dire, after explaining the nature of the charged offense, the trial judge inquired "whether anyone is already of the opinion that he or she because of the nature of the offense could not fairly sit in such a case?" One of the prospective jurors to respond affirmatively was Keith Adams. When asked about his response, Adams stated that "[a]n allegation was made against another man in which my daughter-in-law was involved in it. He left. They never got to complete the investigation so—.... We turned it in and by the time they went to interview him he was gone. He left the state. Nobody knows where he went or anything. That was 14 years ago." When asked by the State's attorney whether that incident "might affect [his] ability to sit on this case," Adams replied "Oh, yeah."

When asked by Garza's attorney, Scott Donaho, whether any prospective juror was "in law enforcement or have family members who are associated with law enforcement," Adams again responded affirmatively—"Ex T.D.C., ex-law enforcement and also the county judge downstairs." When Donaho followed up by asking whether that would influence Adams in sitting on a case like this, Adams stated "[t]here's other reasons I don't want to sit on this case." This response did not elicit a follow-up question from Donaho. When Donaho asked the panel members if they "can give no more weight to [a police officer's] testimony than [they] would to Richard Lee Garza's testimony because simply they're a police officer," only Adams shook his head to indicate "no."

Adams also gave answers that could be viewed as favorable to the defense. For instance, in response to Donaho's questions, Adams indicated that he believed a child might "say something that's untrue and yet believe that it is true," because the "child could be confused and improperly influence[d] by what we call good touch, bad touch, shows, books, films, mother and daddy talking to them"; a child's story that is not true "can be reinforced over and over and over again by the way the child is spoken to and questioned"; he believed that "a child can be influenced about sex by what they see in their home with their own parents, even at 60 months of age"; "a child will do unusual and extraordinary things to get attention"; and

"a child at five years, 60 months old can deceive an adult."

At the conclusion of voir dire, Adams was seated as a juror; Donaho did not challenge Adams for cause or use a peremptory strike against him. After the jury was sworn-in and Garza had pleaded not guilty, Adams spontaneously asked the court: "I've got a question for you. What about if I know all the officers in the Sheriff's Department, would that be a problem?" The trial court responded: "No, sir, I think you made it plain that you knew some of those folks." Adams ultimately became the jury foreman.

Garza was convicted and sentenced to twenty years in prison on each count. In his subsequent motion for a new trial, Garza alleged he received ineffective assistance of counsel because Donaho failed to conduct a complete voir dire, failed to conduct individual voir dire, and failed to strike Adams. At the onset of the hearing on Garza's motion, the trial judge stated:

I disclosed to the counsel that I had a conversation with Mr. Donaho during the course of the trial ... in which I inquired how it came to be that the foreman—the man that turned out to be the foreman—had been left on the jury. Mr. Donaho had told me at that time that in essence that he thought the man was of such a personality that it would be impossible for all of the jurors to agree with him and that it would be basis for a hung jury in the case. . . .

When Donaho testified, he explained that he was distracted during voir dire by news that his wife, who had assisted him in selecting juries for the previous twenty years, had been diagnosed with cancer:

Q   And can you please tell the court about what was going on in your life during the trial?

A   My wife and I have been married for 54 years, and on the day we were to set the jury we received notice that there were some malignant cells that were being found in some fluid that had been taken as a sample from my wife's lung. She has helped me select juries for 20 years as a trial lawyer and she was absent from the courtroom with this information being known to me that day.

Donaho concluded that he failed in his responsibility by failing to conduct individual voir dire. Donaho also testified that, had he not been so distracted, he would have challenged Adams for cause or used a peremptory strike against him:

Q   And let's talk specifically about someone who ended up being on the panel, Mr. Keith Adams.

A   That gentleman had very clearly indicated his propensity to be leaning towards the State. He was an officer, a peace officer or had been a peace officer, is [sic] a peace officer would have normally been routinely challenged for cause, and I have no doubt that it would have been granted had I asked for it. I simply didn't ask[ ] for it.

Q   What did he say to you to indicate to you that he was biased against the defendant?

A   I don't remember all the individual words that he used but he was very clear that he would not be in favor of my client. . . .

Q   And so had those instances not been going on in your personal life, you would have asked for challenge for cause.

A   I don't have any doubt that if I had had my wits about me I would have not have failed to do that.

Q   And it's your opinion that the Judge would have granted that challenge.

A  That's my opinion, yes, based on what he had—what the Judge had heard in the courtroom.

Q  And then in your experience, had the Judge not granted the challenge for cause, you would have then tried to strike him peremptor[ily]?

A  No question it would've been a peremptory strike.

Thus, when Donaho saw Adams "get up and walk to the jury box, [Donaho] was absolutely shocked that [Adams] was still there." It was at that point that he "got [his] wits back together." Donaho also confirmed that, while the jury was out, he told the trial judge that, after the mistake was made, they "hope[d] that [Adams] would be so controversial in the jury room that he would at least hang the jury." He then confirmed that leaving Adams on the jury was not his intent but a mistake:

Q  And so for clarification sake, it was not your intent to leave him on the jury panel, it was indeed a mistake that you had made by not striking him.

A  That is correct.

At the conclusion of the hearing, the trial court granted Garza's motion, expressly finding that, while Donaho "was in every other way an effective lawyer," his failure to strike Adams was ineffective, implicitly finding that the failure to strike Adams was not trial strategy and that the omission prejudiced Garza's defense. The State appeals.

## STANDARD OF REVIEW

■ "It is well established that the granting or denying of a motion for new trial lies within the discretion of the trial court. We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable." *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995)

(citation omitted). Accordingly, if there is conflicting evidence on an issue of fact, we defer to the trial court's credibility determination. *See id.*

## APPLICABLE LAW

To establish ineffective assistance of counsel, a defendant must prove, by a preponderance of the evidence, that his trial counsel's deficient performance prejudiced him to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). Accordingly, to establish deficient performance, a defendant must not only show that his trial counsel's performance fell below an objective standard of reasonableness but also rebut the presumption that his trial counsel's decisions were based on sound strategy. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. To establish prejudice, a defendant must "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

## DEFICIENT PERFORMANCE

■ The State first argues that the trial court erred in concluding that Garza's trial counsel was deficient in failing to strike Adams. We disagree.

■ "A challenge for cause may be made by . . . the defense" on the ground that a veniremember "has a bias or preju-

dice in favor of or against the defendant." Tex.Code Crim. Proc. Ann. art. 35.16(a)(9) (Vernon Supp.2003). This ground exists if the veniremember cannot "impartially judge the credibility of the witnesses." *Jones v. State,* 982 S.W.2d 386, 389 (Tex. Crim.App.1998), *cert. denied,* 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999) (citing *Hernandez v. State,* 563 S.W.2d 947, 950 (Tex.Crim.App.1978)). We review the trial court's ruling sustaining a challenge for cause with "considerable deference," "because it is in the best position to evaluate the venireman's demeanor and responses." *Colburn v. State,* 966 S.W.2d 511, 517 (Tex.Crim.App.1998). Thus, "[i]n reviewing the trial court's action, we ask whether the totality of the voir dire testimony supports the court's finding that the prospective juror is unable to follow the law as instructed, and reverse only if a clear abuse of discretion is evident." *Id.*

Adams was challengeable for cause on at least two grounds. First, when asked whether the incident involving his daughter-in-law "might affect [his] ability to sit on this case," Adams responded "Oh, yeah." And, when asked if he "can give no more weight to [a police officer's] testimo-ny than [he] would to Richard Lee Garza's testimony simply because they're a police officer," Adams indicated he could not. Moreover, Donaho testified that, if the trial judge did not sustain a challenge to Adams for cause, he would have exercised a peremptory strike against Adams.[1]

The State argues that Donaho's failure to strike Adams was trial strategy. However, the record of the hearing on Garza's motion for new trial contains Donaho's explicit testimony that his failure to strike Adams was not trial strategy but a mistake, which is consistent with Donaho's testimony regarding his conversation with the trial judge while the jury was out: "[M]y response to him at that time was after-the-fact, after the mistake had been made was that we hope that he would be so controversial in the jury room that he would at least hang the jury." Although the trial judge's memory of this conversation differed somewhat from Donaho's, we defer to the trial court's credibility determination. *See Lewis,* 911 S.W.2d at 7.[2]

Citing *Bone v. State,* 77 S.W.3d 828 (Tex.Crim.App.2002), the State next ar-

---

1. The State argues that, rather than relying upon *Strickland's* objective standard, the trial court impermissibly relied on its "subjective analysis" of Donaho's "subjective motivations." In support of its argument, the State points to the trial judge's comment that he found Donaho's explanation during trial "unsatisfactory." We do not agree that this incidental comment by the experienced and learned trial judge undermines or vitiates his implicit conclusion that, under *Strickland's* objective standard, Donaho was ineffective in failing to challenge Adams for cause or peremptorily strike him, particularly in light of the record evidence of Adams' bias. Indeed, it seems to us that if failing to challenge Adams for cause or peremptorily strike him were not objectively unreasonable, the trial judge would never have inquired of Donaho why he left him on the jury.

2. At oral argument, the State cited *Carmouche v. State,* 10 S.W.3d 323 (Tex.Crim.App.2000), for the proposition that we should not afford deference to the trial court's credibility determination, because there is objective proof in the record that leaving Adams on the jury was trial strategy. In *Carmouche,* the court declined to defer to the trial court because "the nature of the evidence presented in the videotape does not pivot 'on an evaluation of credibility and demeanor.' Rather, the videotape presents indisputable visual evidence contradicting essential portions of [the] testimony." *Carmouche,* 10 S.W.3d at 332. That is not the case here. Whether to believe Donaho's explanation for leaving Adams on the jury during trial or his explanation at the motion for new trial hearing rests entirely "on an evaluation of credibility and demeanor." *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim. App.1997).

gues that the trial court erred in granting Garza's motion for new trial because there was a "plausible professional reason" for leaving Adams on the jury in light of his pro-defense responses to several of Donaho's questions to the venire. However, *Bone* is distinguishable. In that case, the court was "asked whether an appellate court may reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions." *Id.* at 830. In this case, on the other hand, the record does contain a specific explanation for Donoho's failure to strike Adams—he was so distracted by his wife's illness, he failed to challenge Adams for cause or peremptorily strike him.

Finally, the State argues that the trial court erred in concluding that Donaho's performance was deficient because, except for his failure to challenge Adams for cause or peremptorily strike him, Donaho conducted an otherwise effective voir dire. However, the State does not cite, and we have not found, a single authority stating that a finding of deficient performance is precluded if trial counsel performs during one stage of the proceedings adequately with one exception. Indeed, as discussed below in the prejudice context, even a single, isolated error—if sufficiently egregious—may properly result in a finding of ineffective assistance of counsel.

Because the record supports the trial court's explicit finding that Donaho was ineffective in failing to challenge Adams for cause or peremptorily strike him, as well as the trial court's implicit finding that Donaho's failure to challenge or strike Adams was a mistake and not trial strategy, we hold the trial court did not abuse its discretion in concluding that Donaho's performance was deficient.

## PREJUDICE

The State argues the trial court abused its discretion by implicitly finding that Donaho's error prejudiced Garza's defense because the court "bas[ed] its decision on one isolated act or omission." We again disagree.

As a general rule, "ineffective assistance of counsel cannot be established by isolating or separating out one portion of the trial counsel's performance for examination." *Smith v. State*, 676 S.W.2d 379, 385 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). However, "a single partial juror will vitiate a conviction." *Delrio v. State*, 840 S.W.2d 443, 445 (Tex.Crim.App. 1992); *see also Reynolds v. State*, 163 Tex. Crim. 496, 294 S.W.2d 108, 110 (1956) ("One improper juror destroys the integrity of a verdict."); *Alaniz v. State*, 937 S.W.2d 593, 596 (Tex.App.-San Antonio 1996, no pet.) ("The presence of one biased juror destroys the impartiality of the entire jury and renders it partial.").

Without discussing these authorities, the State argues that Garza has not "affirmatively prove[n]" that Adams' presence on the jury prejudiced his defense. However, as the Supreme Court explained in *Strickland*, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Moreover, determining Adams' full effect on the outcome of the trial is precluded by Texas Rule of Evidence Rule 606(b), which prohibits jurors from testifying "as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent

to or dissent from the verdict...." Tex.R. Evid. 606(b).

The State also argues that, "[h]aving created the error, if any, themselves, [Garza] and his attorney, with a combined thirty-three years of criminal defense experience, may not now claim that error is reversible." However, none of the cases cited by the State considered the defendant's status as an attorney in a situation, like Garza's, in which the defendant's trial attorney was ineffective in performing his duty to his client, the deficiency undermined confidence in the outcome of the trial, and the attorney later admitted his ineffectiveness.[3] *Strickland* requires a defendant to show deficiency and prejudice; we decline to hold Garza to a higher standard. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

Because "[o]ne improper juror destroys the integrity of a verdict," we hold the trial court did not abuse its discretion in implicitly concluding that there was a reasonable probability that Adams presence on the jury undermined confidence in the outcome of Garza's trial.

### Conclusion

Affirmative evidence supports the trial court's finding that, by permitting Adams to remain on the jury, Garza's trial counsel rendered ineffective assistance of counsel. Accordingly, since "[o]ne improper juror

destroys the integrity of a verdict," we affirm the trial court's order granting Garza's motion for new trial.

---

**3.** *See United States v. Green,* 882 F.2d 999, 1003 (5th Cir.1989) (holding that trial counsel was not ineffective for failing to file a notice of appeal, because defendant was an attorney, aware of the need to file the notice, and did not rely on his trial attorney to file the notice); *Neal v. State,* 689 S.W.2d 420, 426 (Tex.Crim. App.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985) (considering defendant's status as "an experienced, knowledgeable trial lawyer" in deciding whether there had been a "valid waiver of [the defendant's] right to counsel at the time he sought and obtained the court's permission to appear

pro se"); *Linson v. State,* No. 04–00–00632– CR, 2002 WL 1573424, * 5 (Tex.App.-San Antonio July 17, 2002, no pet.) (not designated for publication) (holding that trial counsel was not ineffective in failing to move for a mistrial because defendant stated in open court he did not wish to move for a mistrial; and "defendant may not create reversible error by his own manipulation"); *State v. Oliver,* 101 Ohio App.3d 587, 656 N.E.2d 348, 351 (1995) (considering defendant's status as an attorney in deciding whether he "knowingly and intelligently waived his right to testify").