

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

## No. 07-20-00119-CR
_____

FREDERICK OWENS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 278th District Court
Walker County, Texas
Trial Court No. 28301; Honorable Hal R. Ridley, Presiding

June 18, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Frederick Owens, appeals from his convictions by jury of two counts of indecency with a child by contact[1] and two counts of aggravated sexual assault of a child[2] and the resulting concurrent sentences of forty years for each of the indecency with a

---

[1] TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2020).

[2] TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West 2020).

child by contact offenses and fifty years for each of the aggravated sexual assault of a child offenses. Appellant challenges his convictions through four issues: (1) the trial court abused its discretion by denying his motion for continuance, (2) the trial court erred by denying his motion for new trial based on ineffective assistance of counsel, (3) the trial court erred in admitting certain evidence, and (4) the evidence presented was insufficient to support duplicitous convictions for indecency by touching and aggravated sexual assault. We affirm Appellant's convictions.[3]

## BACKGROUND

Appellant was initially indicted in 2017 for the felony offense of continuous sexual abuse of a young child.[4] The indictment described the acts of sexual abuse as indecency with a child by touching the genitals of the child and as aggravated sexual assault of a child by penetration of the child's sexual organ with Appellant's finger. In February 2020, Appellant was charged via a five-count indictment with two counts of indecency with a child by contact, two counts of aggravated assault of a child by digital penetration, and one count of aggravated sexual assault of a child by penile penetration. On the day of trial, the prosecutor announced the State would proceed to trial only on the first four counts of the indictment.

---

[3] Originally appealed to the Tenth Court of Appeals, sitting in Waco, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[4] *See* TEX. PENAL CODE ANN. § 21.02 (West 2020).

The State presented its case through a number of witnesses. Appellant also testified on his own behalf, denying all of the allegations.

Evidence presented at trial showed the complainant's mother and Appellant were married for about fifteen years. The complainant, Beth, is the mother's child from a prior relationship.[5] By the time of trial, Beth was a twenty-nine-year-old adult.[6] Beth first testified to an instance in which Appellant touched her when she was ten years old. On that occasion, she had taken a shower and wrapped herself in a sheet. She sat on the couch and Appellant came to sit next to her. He began rubbing "his hand up my thigh and rub -- well, before he got to my vagina, he said that, 'this is what little girls do for their dads.'" Beth said he then "started to touch and rub on my vagina" underneath the sheet. She told the jury that after that, this type of touching occurred at "[e]very opportunity he could get me alone." She said when she confronted him about the touching, he threatened to kill her.

Beth also told the jury about the first time Appellant penetrated her vagina with his fingers. She said it occurred after the family moved while she was still under the age of fourteen. It was late one night and she was sitting on the floor next to Appellant's legs as he sat on the couch. He "started touching again then this time he went inside." He told her to "relax and kept going." She said that the next day, she was "burning and itching" so she went to the school nurse. The nurse called Beth's mother but Beth was simply told to go back to class. Beth testified the digital penetration continued at "[e]very

_____

[5] "Beth" is a pseudonym that was ascribed to the complainant during trial to protect her identity.

[6] The record indicates Beth refrained from bringing her allegations against Appellant at an earlier time because he had beaten her and threatened to kill her if she told anyone.

3

opportunity" Appellant had.  She said that when she told him no, she would be beaten. She described it as being "hit literally everywhere but my face.  I've been choked out to damn near passing out.  He beat me so hard with a belt -- a leather belt it broke, a water hose, extension cord, and he would always give my mother some lame excuse about being grown or something like that.  That was his way of covering it up or getting away with it."

Beth testified that when she turned fifteen, she started taking birth control and Appellant "started penetrating me with his penis."  Beth testified this again occurred at every opportunity Appellant was able.  Beth also told the jury about an instance in which she was in the kitchen seasoning food.  Appellant came in and pulled her shorts down. Beth's mother walked in and saw what was occurring.  Her mother did not take any action so Beth decided to join the military.  Her mother provided permission for her to do so. She left for training quickly thereafter and had very little contact with her family.

Beth testified that in 2016, she reached a point in her life in which she was ready to file charges against Appellant.  She had spoken with her sister, Ann,[7] and this prompted her to take action.  She talked to the Walker County Sheriff's Office at that time.

Ann testified to her experience with Appellant.  She told the jury that in the summer of 2008, she woke up to feel Appellant's finger moving up and down on her vagina.  She said he later told her "girl, last night I thought you were your mom."  Ann said she spoke with Beth before also speaking with the Walker County Sheriff's Office in 2016.

---

[7] "Ann" is a pseudonym that was ascribed to the witness during trial to protect her identity.

Beth's mother testified she witnessed the incident regarding Beth and Appellant in the kitchen and saw he had pulled Beth's shorts down. She said she asked Beth if anything was going on and Beth told her "no." Beth's mother said she did not learn of any of the allegations until speaking with Ann in 2016. Beth's mother met another man shortly thereafter and filed for divorce from Appellant in June 2016. She said a hearing regarding the divorce was set for the end of August 2016, and that she reported the allegations against Appellant to police on August 2, 2016.

Appellant testified in his own defense. He denied all of the allegations and said he did not learn of Beth's allegations until a hearing that was held regarding child conservatorship of the child he and Beth's mother had together. He also testified that in 2013, Beth's mother had made allegations to Child Protective Services that he was sexually assaulting the children at a time during which he and Beth's mother were separated. During his testimony and throughout trial, Appellant accused Beth of falsifying the allegations against him as a result of Beth's mother's coaching in order for Beth's mother to gain custody of their minor child.

Following presentation of the evidence, the jury found Appellant guilty of each of the four counts set forth in the indictment. The court held a punishment hearing, found the enhancement paragraphs contained in the indictment to be "true," and sentenced Appellant as noted. Thereafter, Appellant filed a motion for new trial. The court held a hearing and subsequently denied Appellant's motion by written order.

5

**ANALYSIS**

**ISSUE ONE—MOTION FOR CONTINUANCE**

Via his first issue, Appellant contends the trial court denied his constitutional right to due process when it denied his motion for continuance on an indictment for which he was never arrested or arraigned and for which he did not have notice of trial setting.

Articles 29.03 and 29.08 of the Texas Code of Criminal Procedure set out the requirements for a motion for continuance. *Anderson v. State*, 301 S.W.3d 276, 278-79 (Tex. Crim. App. 2009). Article 29.03 provides that "[a] criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). Article 29.08 provides that "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." TEX. CODE CRIM. PROC. ANN. art. 29.08 (West 2006). Together, these statutes require a sworn written motion to preserve appellate review from a trial court's denial of a motion for continuance. *Anderson*, 301 S.W.3d at 279; *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). Accordingly, an oral motion for continuance presents nothing for review. *Dewberry*, 4 S.W.3d at 756; *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995).

On the day of trial, Appellant orally moved for a continuance, arguing he was being tried on counts for which he had not been arraigned. After some discussion, the trial court denied the motion. Appellant did not submit a written and sworn motion for continuance to the court. As such, he has not preserved error on this point. *See Anderson*, 301 S.W.3d at 279-80 (constitutional rights, including those that might implicate a defendant's

6

due process rights, may be forfeited for purposes of appellate review unless properly preserved).  We thus overrule his first issue.

Even if Appellant had preserved error on this point, we cannot agree that the trial court violated his due process rights in denying his motion for continuance.  This is because we review a trial court's denial of a defendant's motion for continuance for an abuse of discretion. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).  Under that standard, we will not find the trial court's ruling to be an abuse of discretion unless it fell outside the zone of reasonable disagreement. *See Gallo v. State*, 239 S.W.3d 757, 777 (Tex. Crim. App. 2007).

While it is true that there was one indictment in 2017 alleging Appellant committed the felony offense of continuous sexual abuse of a young child and a second indictment in 2020 alleging five counts of various sexual offenses against a child, we cannot agree with Appellant that his due process rights were violated when the trial court denied counsel's oral motion for a continuance, requested after the State told the court it would not proceed on Count V of the indictment.  Counsel argued that she believed the State was proceeding on the 2017 indictment but if the State was planning to proceed on the 2020 indictment, she needed additional time to prepare because the indictments were different.  She argued Appellant had not been arraigned on the new cases and that the State had added new counts.

The 2017 indictment described the sexual conduct comprising the offense of continuous sexual abuse of a young child.  That sexual conduct included indecency with a child by touching the child's genitals and aggravated sexual assault of a child by

7

penetration of the child's sexual organ with Appellant's fingers. Those were the same predicate offenses set forth in the 2020 indictment and, as such, each of those offenses were lesser-included offenses of the greater offense set forth in the 2017 indictment. Thus, Appellant and his counsel had notice of the individual offenses in the 2020 indictment and had had time to prepare his defense against each offense. Furthermore, Appellant was arraigned on the counts contained in the 2020 indictment on the day of trial. We thus do not find any abuse of discretion in the trial court's ruling and would overrule Appellant's first issue even if it had been properly preserved.

### ISSUE TWO—MOTION FOR NEW TRIAL

Through his second issue, Appellant argues the trial court abused its discretion when it denied Appellant's motion for new trial because he showed his trial counsel's "glaring ineffective assistance of counsel" during the voir dire phase of trial.

An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if no reasonable view of the record could support the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017) (citations omitted). This is a deferential standard of review that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling. *Id.* (citations omitted). In determining whether the trial court abused its discretion, an appellate court must not substitute its own judgment for that of the trial court, and it must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* (citations omitted). The trial court's ruling is within the "zone of reasonable disagreement" when there are two reasonable views of the evidence and its view is within one of those views. *Id.* (citation omitted).

8

To prove a claim of ineffective assistance of counsel, Appellant must establish by a preponderance of evidence that: (1) his counsel's performance was deficient and (2) that deficient performance deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 669, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005). Appellant must satisfy both *Strickland* components, and the failure to show either deficient performance or prejudice will defeat an ineffectiveness claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

Under the first prong of the *Strickland* test, Appellant must show the attorney's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). We evaluate this prong under the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Under the second prong, Appellant is required to prove that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694; *Perez*, 310 S.W.3d at 893. "A reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, in order to establish prejudice, Appellant must show "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.* at 687. It is not sufficient for Appellant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. For a complaint regarding the guilt-innocence phase of a case, Appellant is required to show that "there

is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Appellant carries the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813. Allegations of ineffectiveness must be firmly based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his or her conduct. *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999). *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (allegations of ineffectiveness must be firmly founded in the record). The ultimate focus of trial court's inquiry is "the fundamental fairness of the proceeding." *Strickland*, 466 U.S. at 696; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

After Appellant filed his motion for new trial, the court held a hearing during which Appellant's trial counsel testified. She told the court that during the punishment phase of trial, she objected to the placement of one of the venire members, Roy Moore, on the jury for Appellant's case. Her basis for the objection was she was concerned Moore "was a professional witness for the State." As support for that basis, counsel attempted several times to reference a conversation that occurred off the record, in the jury room, after the guilt-innocence phase of trial. The trial court sustained the State's objections to those references and did not permit her to discuss statements made during that conversation. Counsel testified she learned from the records of the jury panel that Moore was a police officer and believed he should have been struck for cause. She explained that there were several police officers on this panel and that she questioned each of them, including Moore, regarding potential biases and the ability to be fair. Moore stated he could be fair.

However, counsel testified she believed that not striking Moore was a mistake and that leaving him on the jury was not part of her legal trial strategy.

The court listened to arguments from the State and defense and reserved its decision on the motion until it reviewed cases presented to it. It subsequently issued its order denying Appellant's motion for new trial, stating therein that there was no evidence in the trial record or the motion for new trial to show "a bias or prejudice by [Moore] or to suggest that bias or prejudice was shown by direct evidence, voir dire questions and answers or by implication[.]"

To support his argument that counsel provided ineffective assistance during the voir dire process when she failed to challenge Moore, Appellant cites *State v. Garza*, 143 S.W.3d 144, 150 (Tex. App.—San Antonio 2004, pet. ref'd). There, the court granted the defendant's motion for new trial on the basis of ineffective assistance of counsel when counsel failed to challenge a juror because counsel was distracted. *Id.* The court concluded that "[b]ecause one improper juror destroys the integrity of a verdict" the trial court did not abuse its discretion in "implicitly concluding that there was a reasonable probability that [the juror's] presence on the jury undermined confidence in the outcome of [the defendant's] trial." *Id.* at 151. Appellant states in his analysis that Moore became the jury foreman and acknowledged he worked with the investigating detective in this case. Appellant argues that implicit in that statement was that Moore also worked with the Walker County District Attorney's Office. Appellant notes Moore sat on the front row, wearing his police uniform, badge, cuffs, and sidearm. He contends counsel was "intrinsically deficient" in failing to further question Moore for a challenge for cause or in failing to utilize a peremptory strike such that it undermined the fundamental fairness and

11

outcome of his trial. He points to counsel's statement and the court's agreement that "no reasonable attorney would have put this man on the jury panel." He notes also the court's statement during sentencing that it was counsel's responsibility to ask the proper questions during voir dire and that any error in placing Moore on the jury was counsel's error.

Appellant further argues that determining Moore's full effect on the outcome of his trial is precluded by Rule 606 of the Texas Rules of Evidence. *See* TEX. R. EVID. 606. That rule prohibits jurors from testifying "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." TEX. R. EVID. 606(b)(1). A juror is permitted to testify under two exceptions: (1) about whether an outside influence was improperly brought to bear on any juror; or (2) to rebut a claim that the juror was not qualified to serve. TEX. R. EVID. 606(b)(2).

The State disagrees with Appellant's contentions, first noting that unlike *Garza* and similar cases, Moore stated he could be a fair and impartial juror. He never said he could not be. Further, the State contends, Moore's testimony would have been prohibited under Rule 606(b)(2) because it was not of a type that would have fallen under the two enumerated exceptions. We agree with both assertions.

A juror is not permitted to testify about any events or statements occurring during jury deliberations, any of the jurors' mental processes, or how an improper outside influence actually affected the jurors. *Colyer v. State*, 428 S.W.3d 117, 123 (Tex. Crim.

12

App. 2014) (citations omitted). Typical situations in which juror testimony is allowed under the "outside influence" exception are those involving "threats, bribes, communications with court personnel, and assaults upon a jury member." *Id.* at 125. They also include "factual or legal information conveyed to the jurors by a bailiff or some other unauthorized person who intends to affect the deliberations. But the outside influence exception does not include influences such as coercion by a fellow juror or the discussion of a juror's own personal knowledge." *Id.* The information allegedly conveyed during a conversation in the jury room concerning Moore's status as an expert State witness thus does not fall within the exception. Therefore, the trial court did not abuse its discretion in refusing to permit testimony about that conversation. Further, while Appellant's counsel testified it was a mistake to place Moore on the jury, we cannot say such a mistake amounts to ineffective assistance of counsel. As noted above, Moore said during voir dire that he could be a fair and impartial juror. As such, the trial court could have concluded counsel's choice to allow Moore to serve on the jury did not fall below the objective standard of reasonableness. Accordingly, Appellant has not satisfied his burden under the first *Strickland* prong.[8]

As such, we find the trial court did not abuse its discretion in denying Appellant's motion for new trial because the record reasonably supports the trial court's ruling. We thus overrule Appellant's second issue.

---

[8] Because Appellant has failed to satisfy the first *Strickland* prong, we need not address the second. *See Strickland*, 466 U.S. at 697.

### ISSUE THREE—ADMISSION OF PRIOR CONVICTION

Appellant asserts via his third issue that the trial court erroneously admitted evidence of his prior convictions for aggravated assault with a deadly weapon as an extraneous offense and character evidence during the guilt-innocence phase of the trial. It is unclear from the record whether the trial court admitted the evidence under Texas Rule of Evidence 404(b) (character evidence) or Texas Rule of Evidence 609 (impeachment by evidence of a criminal conviction). Accordingly, we will analyze the admission of the prior conviction under both.

We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). In reviewing a trial court's evidentiary ruling, we will uphold that ruling as long as it falls within the zone of reasonable disagreement and is correct under any theory of law applicable to the case. *Id.* In that regard, we accord the trial court "wide discretion" regarding its decision to admit impeachment evidence. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992).

"Rule 404(b) is a rule of inclusion rather than exclusion—it excludes only evidence that is offered solely for proving bad character and conduct in conformity with that bad character." *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Rule 405 allows specific instances of conduct to be admitted into evidence when the character trait is essential to the defense. TEX. R. EVID. 405. Evidence that is admissible under Rule 404(b) may nonetheless be excluded

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403; *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999).

In a Rule 403 analysis, several factors are considered: (1) how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable, (2) the potential that the extraneous offense will impress the jury in some irrational but indelible way, (3) the trial time needed to develop the evidence, and (4) the proponent's need for the extraneous offense evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990). Rule 403 favors admissibility, and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389. As with Rule 404, a trial court does not abuse its discretion when it admits or excludes evidence pursuant to Rule 403 so long as its decision is within the zone of reasonable disagreement. *See De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009).

Here, Appellant's defensive theory was Beth's allegations against him were false and stemmed from a custody dispute between Appellant and Beth's mother.[9] He contended that Beth's mother used Beth to get what she desired and coached Beth in making the allegations against him. He emphatically denied all of the allegations lodged against him, and during his testimony, noted he had been in the military, that he never

---

[9] However, Beth testified, referring to whether she believed either her mother or her father should have custody of their youngest child, that "I believe that these two people are the last people on earth who should be allowed to even breed or have anything to do with children."

15

"beat" the children, and that he was the one who calmed Beth's mother down when arguments became violent between her and Beth.[10] The State, therefore, believed it had a need for the use of Appellant's prior conviction for aggravated assault with a deadly weapon to dispute the favorable impression Appellant gave of himself as a peacemaker. Further, because there was no corroborating physical evidence of Beth's allegations, the credibility of the witnesses was of high importance. The offenses for which Appellant was charged and his prior conviction were not of the same nature and accordingly, there was minimal danger of juror confusion or distraction. For the same reason, it was unlikely the jury would find him guilty of these offenses based on his commission of aggravated assault with a deadly weapon. Lastly, the evidence of Appellant's prior conviction comprised a very small portion of the record. Appellant's testimony encompassed about 1,500 lines of testimony, while the presentation of the evidence of his prior conviction comprised only thirty lines. In total, the jury heard testimony that comprised nearly 700 pages of record. As such, very little time was spent on Appellant's prior conviction. In this context, we find the trial court did not err in admitting the evidence under Rules 403 and 404(b).

We turn now to our analysis of the admission of the conviction under Rule 609. As a general matter, when attacking the credibility of a witness, the trial court may admit evidence of prior criminal convictions only if the crime was a felony or involved moral turpitude, the court determines that the probative value of the conviction outweighs its prejudicial effect, and it is elicited from the witness or established by public record. *See*

---

[10] The record is replete with descriptions of the dysfunctionality of this family and the disputes between the mother and the children, Appellant and the children, and the mother and Appellant.

TEX. R. EVID. 609(a). Rule 609 further provides that evidence of a prior conviction is generally not admissible if more than ten years have elapsed since the date of conviction or release from confinement, unless the court determines that the probative value substantially outweighs the prejudicial effect. TEX. R. EVID. 609(b). The Texas Court of Criminal Appeals has set forth a non-exclusive list of factors in weighing the probative value of a conviction against its prejudicial effect. *Theus*, 845 S.W.2d at 880. Those factors include: (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Id.* (citing *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S. Ct. 646, 50 L. Ed. 2d 627 (1976)). The "application of these factors to a particular case cannot be performed with mathematical precision because several of the factors relevant to assessing probative value themselves cut in different directions . . . ." *Theus*, 845 S.W.2d at 880 (citation omitted).

The impeachment value of crimes that involve deception is higher than crimes that involve violence, and the latter have a higher potential for prejudice. *Id.* (citing *United States v. Jackson*, 627 F.2d 1198, 1210 (D.C. Cir. 1980)). Accordingly, when a party seeks to impeach a witness with evidence of a crime that relates more to violence than not, the first factor weighs against admission. *Theus*, 845 S.W.2d at 880. Also, the second factor weighs against admission if the past crime is not recent. *Id.* (citation omitted). If, however, the past crime and the charged crime are dissimilar, the third factor will weigh in favor of admission. *Id.* The rationale behind this argument is that the

17

admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense. *Id.* The remaining factors, the importance of the defendant's testimony and credibility, are related because "both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id.* The more important the defendant's credibility, the greater the need of the State to be able to impeach his testimony. *Id.* (citation omitted).

Here, the State utilized Appellant's 1994 conviction for aggravated assault with a deadly weapon in an attempt to impeach his testimony. The offense was one of violence, not deception, weighing against admission. Appellant testified he was convicted in 1994 and released in 1996 or 1997. The offenses for which he was prosecuted in this matter allegedly occurred during a period from 2000 through 2007. Therefore, the time between his release on the prior felony and the onset of the conduct leading to the charges herein was approximately three or four years. This is not a particularly short or long period of time and weighs neither in favor of nor against admission. Appellant's prior conviction and the charged offenses are not at all similar in nature and thus, the third *Theus* factor weighs in favor of admission. Appellant testified at trial, denying all of the allegations against him. Appellant's credibility was thus a central matter in the case. Accordingly, the State's ability to impeach his credibility was of great importance. *See Theus,* 845 S.W.2d at 881 (citing *United States v. Fountain*, 642 F.2d 1083, 1092 (7th Cir.), *cert. denied*, 451 U.S. 993, 101 S. Ct. 2335, 68 L. Ed. 2d 854 (1981) ("As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility.")). Appellant admits on appeal that "[c]redibility was

18

the determining factor of guilt in this case." As such, the importance of Appellant's testimony and his credibility as well as the State's need to impeach Appellant's credibility was high, weighing in favor of admission under the fourth and fifth *Theus* factors.

Assessing the record in light of Rule 609 and the *Theus* factors, we cannot say that the trial court's decision to admit the impeachment evidence was outside the zone of reasonable disagreement. Accordingly, the trial court did not err in admitting evidence of Appellant's 1994 conviction for aggravated assault with a deadly weapon. We resolve this issue against Appellant.

### ISSUE FOUR—SUFFICIENCY OF THE EVIDENCE FOR DUPLICATE CONVICTIONS

Lastly, Appellant argues the evidence is insufficient to support convictions for both indecency with a child by contact and aggravated sexual assault of a child by digital penetration.

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Torres v. State*, 424 S.W.3d 245, 251 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that Appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). Instead, the verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to

believe or disbelieve any portion of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the verdict returned. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

A person commits the offense of indecency with a child by contact if he "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a). Section 21.11 defines sexual contact as engaging in the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* at § 21.11(c). A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child under the age of fourteen, by any means. *See id.* at §§ 22.021(a)(1)(B)(i), (a)(2)(B) (West 2020).

The testimony of a victim alone is sufficient to support a conviction of these offenses. *See, e.g., Beltran v. State*, 517 S.W.3d 243, 250 (Tex. App.—San Antonio 2017, no pet.); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd). *See also* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). As indicted herein, Appellant was charged

20

with engaging in two counts of indecency with a child under the age of seventeen by sexual contact by touching Beth's genitals and with two counts of aggravated sexual assault of a child under the age of fourteen by penetrating Beth's sexual organ with his fingers. The counts setting forth the indecency with a child by sexual contact charges did not specify the means through which the contact was made.

Appellant argues the evidence is insufficient to prove he was guilty of all four counts. He contends the record shows that Beth was only able to recall one single and specific occasion on which he allegedly rubbed her vagina and likewise, was only able to recall one single and specific occasion on which he allegedly penetrated her vagina with his finger. Appellant argues Beth was unable to remember any other details concerning any other alleged touching of her genitals or digital penetration of her vagina. The indictment alleged that he touched Beth's genitals but did not allege that he touched Beth's genital with his fingers. Therefore, he argues, there is no evidence to show that his four convictions were not based on the same instance of conduct. Due to this lack of evidence, Appellant contends, he was wrongfully convicted of two counts of indecency by contact and two counts of aggravated sexual assault of a child by digital penetration.

The State points out, and we agree, that Beth testified to two separate instances during which Appellant touched her vagina with his fingers. The first was when she was ten years old while sitting on the couch, wrapped in a sheet, in their house. The second was when she was in middle school. It is true Beth did not provide much detail regarding the second instance, but the record provides sufficient evidence from which the jury could have clearly determined it was a separate incident from the first. Beth testified that on each of these occasions, Appellant rubbed her vagina with his fingers. Both of these

21

occasions were at a time that Beth was under the age of seventeen. Thus, the record contains sufficient evidence to support the elements of each count of indecency with a child by contact.

Beth also testified that Appellant penetrated her vagina with his fingers in their home at a time when she was under the age of fourteen. On one occasion she was sitting on the floor near Appellant. She said, "he started touching me again then this time he went inside." This was an instance separate from the instances on which Appellant rubbed her vagina as described above and thus, the contact was not merely incidental to the penetration as Appellant argues on appeal. This evidence supports Count III of the indictment. Beth also testified the digital penetration continued every chance Appellant had, providing evidence from which the jury could infer that the penetration occurred on at least one additional occasion, supporting Count IV of the indictment.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant separately committed each of the crimes of which he was convicted. Accordingly, we overrule Appellant's last issue.

### CONCLUSION

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.